IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

HOLMES COUNTY CONSOLIDATED SCHOOL DISTRICT,
DEBRA POWELL, SUPERINTENDENT, AND
HOLMES COUNTY CONSOLIDATED SCHOOL DISTRICT
BOARD OF TRUSTEES, NAMELY LOUISE LEWIS WINTERS,
BOARD PRESIDENT, EARSIE L. SIMPSON, VICE-PRESIDENT,
AND ANTHONY ANDERSON
                                                                    PETITIONERS

VS.                                                 CAUSE NO. 3:21-cv-508-DPJ-FKB

MISSISSIPPI DEPARTMENT OF EDUCATION,
MISSISSIPPI STATE BOARD OF EDUCATION,
STATE COMMISSION ON SCHOOL ACCREDITATION,
ROSEMARY AULTMAN, CHAIR OF THE STATE
BOARD OF EDUCATION, PAMELA MANNERS, CHAIR OF THE
STATE COMMISSION ON SCHOOL ACCREDITATION,
DR. CAREY WRIGHT, STATE SUPERINTENDENT
OF EDUCATION, THE MISSISSIPPI STATE BOARD OF
EDUCATION AND GOVERNOR JONATHON TATE REEVES       RESPONDENTS

**EMERGENCY VERIFIED PETITION FOR INJUNCTIVE RELIEF,
DECLARATORY JUDGMENT, AND COMPLAINT FOR DISCOVERY**

Petitioner Holmes County Consolidated School District, Debra Powell, Superintendent, and Holmes County Consolidated School District Board Of Trustees, namely Louise Lewis Winters, Board President, Earsie L. Simpson, Vice-President, and Anthony Anderson (collectively, Petitioner) bring this action against Respondents for injunctive relief and declaratory judgment, stating under oath the following:

**INTRODUCTION**

1.      The Mississippi Department of Education (MDE), the State Board of Education (SBE), and the Commission on School Accreditation (CSA) engaged in sham, unconstitutional proceedings – violating their own policies and procedures in the process – to determine whether an

1

"extreme emergency situation" exists in the District as the basis for the recommendation to Governor Tate Reeves to abolish the District.

2. The outcome of the unconstitutional, sham proceedings was determined weeks before the "limited audit" – upon which the proceedings was based – was even completed, as MDE had already selected an interim superintend for the District before the District was given a fair opportunity to be heard.

3. Petitioner is entitled to the relief sought herein as it has been denied, among other things, a fair, impartial, and open hearing, thus violating Petitioner's due-process rights.

## PARTIES

4. The District is a political subdivision of the State of Mississippi.

5. Dr. Powell is an adult resident citizen of Hinds County, Mississippi, and the Superintendent of the District.

6. Louise Lewis Winters is an adult resident citizen of Holmes County, Mississippi, and a member of the District's Board of Trustees.

7. Anthony Anderson is an adult resident citizen of Holmes County, Mississippi, and a member of the District's Board of Trustees.

8. Earsie L. Simpson is an adult resident citizen of Holmes County, Mississippi, and a member of the District's Board of Trustees.

9. MDE is an agency of the State of Mississippi. MDE may be served with process upon the Honorable Lynn Fitch, Attorney General of the State of Mississippi, at 550 High Street, Suite 1200, Jackson, Mississippi 39201. Miss. Code § 11-45-3; Miss. R. Civ. P. 4(d)(5).

10. The State Board of Education and its Chair, Rosemary Aultman (collectively "the State Board") are Respondents in this lawsuit. Under the State Board's control and direction, MDE

is responsible for the administration, management, and control of public schools in Mississippi. MDE may be served with process upon the Honorable Lynn Fitch, Attorney General of the State of Mississippi, at 550 High Street, Suite 1200, Jackson, Mississippi 39201. Miss. Code § 11-45-3; Miss. R. Civ. P. 4(d)(5).

11. The CSA and its Chair, Pamela Manners (collectively "the State Board") are Respondents in this lawsuit and may be served with process upon the Honorable Lynn Fitch, Attorney General of the State of Mississippi, at 550 High Street, Suite 1200, Jackson, Mississippi 39201. Miss. Code § 11-45-3; Miss. R. Civ. P. 4(d)(5).

12. Governor Jonathon Tate Reeves is Mississippi's chief executive. Governor Reeves is the Chief Executive of the State of Mississippi and is responsible for upholding the laws of the State of Mississippi. Governor Reeves may be served with process upon the Honorable Lynn Fitch, Attorney General of the State of Mississippi, at 550 High Street, Suite 1200, Jackson, Mississippi 39201. Miss. Code § 11-45-3; Miss. R. Civ. P. 4(d)(5).

## JURISDICTION AND VENUE

13. This Court has original jurisdiction over Portioners' claims pursuant to 28 U.S.C. §§ 1331 and 1343. The Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

14. Venue is proper under, inter alia, 28 U.S.C. § 1391(b)(2) because "a substantial part of the events or omissions giving rise to the claim occurred" in this "judicial district."

## FACTUAL ALLEGATIONS

15. MDE entered the District on April 27, 2021, ostensibly to conduct an "on-site" investigative audit. *See* On-Site Investigative Audit Report, attached as Exhibit 1.

16. While MDE was in the District, it posted an employment opportunity for "Educ-Associate Superintendent (Non-State Service) District Transformation Superintendent, offering a maximum salary of $191,842.42. *See* Employment Opportunity, attached as Exhibit 2.

17. That job posting closed on July 21, 2021. *See id.*

18. Two days later, on July 23, 2021, MDE left the District.

19. MDE violated its own accountability policies when it left the District without conducting an exit interview. *See* Miss. Public School Accountability Standard 5.2.3.5 (2020) ("Near the completion of the on-site investigation, the auditor(s) will schedule a time to meet with the superintendent and school board chair to conduct an exit conference."), attached as Exhibit 3.

20. Five days after closing the job posting, MDE delivered a letter and audit report, giving the District less than six days to prepare for school-takeover hearings. *See* Ex. 1, at 2.

21. Although the standards are written to give MDE unlimited latitude to set the date of a hearing, *see* Ex. 3, at 5.8.5, they also generally provide for a reasonable response period. *See generally* Ex. 3 at 5.8.2. MDE ignored that.

22. If that timeframe was not enough of a due-process denial, during the hearing before the CSA, MDE misrepresented its relationship with a financial advisor who failed to inform it of the District's financial irregularity in late 2018 or early 2019. *See* August 2, 2021, Commission on School Accreditation Hearing at https://www.youtube.com/watch?v=v94IMPsdpmQ.

23. MDE corrected its material misrepresentation during a hearing before the School Board, which was a worse proceeding.

24. The hearing before the School Board was a coordinated farce at which State Board members advocated on behalf of MDE and spent long period of time on their cellphones; individuals misrepresented MDE policies and procedures; manufactured question-and-answer events, in which

falsehoods were made, and coordinated with MDE witnesses to "cross-examine" District representatives. At numerous times throughout the proceedings, Dr. Wright can be seen exiting with Dr. Paula Vanderford and engaging in closed meetings. *See* August 3, 2021, Mississippi Board of Education Hearing at https://www.youtube.com/watch?v=VUAI3Js5ml8.

25. For example, MDE brought in another state employee to state the District did not have relationships with certain state universities.

26. The District, does, and did, have those relationships. *See, e.g.*, Composite Exhibit 4.

27. At the conclusion of the hearing, after less than two hours, the State Board not only declared an emergency, paving the way for a school takeover. It also recommended abolishing the District -- even thought it could have sought other, less extreme remedies – named an interim superintendent to run the dissolved school district, and offered that individual a contract, pending the approval of the Governor.

28. The State Board and CSA made the decisions to recommend dissolution of the District behind closed doors.

29. The State Board's recommendation has been sent to the Governor for his approval with an expiration date of August 17, 2021.

## CAUSES OF ACTION

### Count I: Violation of Due-Process Rights

30. "Administrative proceedings should be conducted in a fair and impartial manner, free from any suspicion of prejudice or unfairness." *Dean v. Public Employees' Retirement System*, 797 So. 2d 830, 837 (Miss. 2000).

31. MBE, the State Board, and the CSA had made their decision well before the hearings held on August 2 and 3, 2021.

32. While MDE was in the District, it posted an employment opportunity for "Educ-Associate Superintendent (Non-State Service) District Transformation Superintendent, offering a maximum salary of $191,842.42.

33. That job posting closed on July 21, 2021—two days before MDE left the District.

34. By the time the School Board announced his decision at the August 3, 2021 hearing, a District Transformation Superintendent had been selected, and her contract was ready for the Governor's signature.

**Count II: Section 37-17-6 Inherently Violates District's Procedural Due Process**

35. An essential principle of due process is that a deprivation of life, liberty, or property "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950). It is also well established that it is a denial of due process for any government agency to fail to follow its own regulations providing for procedural safeguards to persons involved in adjudicative processes before it. *Vitarelli v. Seaton*, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); *Service v. Dulles*, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954).

36. The Respondents conducted a two-month audit and provided less than a weeks' notice for the Petitioners to assess and respond to the audit findings. What is more, Petitioners do not receive an opportunity question anyone regarding the findings. Simply put, the process afforded does not provide an opportunity for a hearing appropriate to the nature of the case.

37. Additionally, never defined the standard of proof at the hearings, which is necessary under the Due Process Clause of the U.S. Constitution as well as the due process clause set out in Article 3, Section 14 of the Mississippi Constitution.

38. "To state a Fourteenth Amendment due process claim under [42 U.S.C.] § 1983, 'a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest.'" *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (*quoting Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001)). "A property interest is not derived from the Constitution or Federal laws," but an independent source such as state law, a contract, or other understanding." *Stem v. Gomez*, 813 F. 3d 20, 210-211 (5th Cir. 2016) (*quoting Evans v. City of Dallas*, 861 F. 2d 846, 848 (5th Cir. 1988)). "Once granted, a property interest cannot be deprived without due process of law." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, (1985); *see also Harris v. Canton Sep. Pub. Sch. Bd. Of Educ.*, 655 So. 2d 898, 902 (Miss. 1995).

39. As the Superintendent of the District, Petitioner Powell had a property interest in her contract. *See generally Greene v. Greenwood Pub. Sch. Dist.*, 890 F.3d 240, 242 (5th Cir. 2018).

40. The Board of Trustees, as individual taxpayers of the District, also had a property interest that allow them to challenge the constitutionality of Section 37-17-6 based on its effect on their local ad valorem taxes. *See generally Bond v. Marion Cty. Bd. of Sup'rs*, 807 So. 2d 1208, 1214 (Miss. 2001) (taxpayers have a due process right to judicial review of the constitutionality of a tax statute).

41. "The function of a standard of proof as that concept is embodied in the Due Process Clause and in the realm of fact-finding, is to "instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication." *In re Winship,* 397 U.S. 358, 370 (1970) (Harlan, J., concurring). The standard serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision."

4836-4859-5188.2

42. The standard of proof is critical to providing the protection required by the Due Process Clause. As stated by the Supreme Court:

> The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of fact finding, is to "instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication." *In re Winship,* 397 U.S. 358, 370 (1970) (Harlan, J., concurring). The standard serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision."

*Addington v. Texas*, 441 U.S. 418, 423 (1979) (civil commitment requires clear and convincing evidence).

43. Consequently, the Supreme Court has held that the standard of proof to be applied in a given proceeding must be established in advance:

> "Standards of proof, like other "procedural due process rules[,] are shaped by the risk of error inherent in the truth-finding process as applied to the *generality of cases,* not the rare exceptions." *Mathews v. Eldridge*, 424 U.S. at 344 (emphasis added). Since the litigants and the factfinder **must know at the outset** of a given proceeding how the risk of error will be allocated, **the standard of proof necessarily must be calibrated in advance.** Retrospective case-by-case review cannot preserve fundamental fairness when a class of proceedings is governed by a constitutionally defective evidentiary standard."
> *Santosky v. Kramer,* 455 U.S. 745, at 757 (1982) (emphasis added) (holding termination of parental rights requires clear and convincing evidence standard); *See also Natural Father v. United Methodist Children's Home*, 418 So.2d 807, 810 (Miss. 1982) (following *Santosky, supra* and holding preponderance of the evidence standard inadequate to terminate parental rights even where authorized by statute.).

44. Thus, Respondents were required to establish the standard of proof "at the outset" of the accreditation and takeover proceedings. Absent a standard of proof promulgated in advance of the accreditation and takeover proceedings, Petitioners could not know how the risk of error was to be allocated, and Petitioners were necessarily denied due process and unduly prejudiced thereby. Indeed, absent such a standard, even "retrospective case by case review cannot preserve fundamental fairness." *Santosky, supra.*

45. To reach the conclusion that Petitioners were denied due process, and that they will be denied due process going forward, we do not need to decide the appropriate standard of proof. It is sufficient to determine that Respondents have not promulgated one. Accordingly, this Court should declare that the failure to have established a standard of proof in advance of the MDE state accreditation and conservatorship hearings deprived Petitioners of due process. The takeover by Respondents should be enjoined, reversed, and rendered.

### Count III: Violation of the Open Meetings Act

46. Pursuant to the Mississippi Open Meetings Act, Miss. Code Ann. § 25-41-1, *et seq.*, official meetings of public bodies are required to be public and open. The Legislative intent of the Mississippi Open Meetings Act is set forth in Miss. Code Ann. § 25-41-

> It being essential to the fundamental philosophy of the American constitutional form of representative government and to the maintenance of a democratic society that public business be performed in an open and public manner, and that citizens be advised of and be aware of the performance of public officials and the deliberations and decisions that go into the making of public policy, it is hereby declared to be the policy of the State of Mississippi that the formation and determination of public policy is public business and shall be conducted at open meetings except as otherwise provided herein."

47. There are limited circumstances in which public bodies may go into executive session closed to the public:

> (1) Any public body may enter into executive session for the transaction of public business; provided, however, all meetings of any such public body shall commence as an open meeting, and **an affirmative vote of three-fifths (3/5) of all members present shall be required to declare an executive session**.
>
> (2) The procedure to be followed by any public body in declaring an executive session shall be as follows: Any member shall have the right to request by motion a closed determination upon the issue of whether or not to declare an executive session. Such motion, by majority vote, shall require the meeting to be closed for a **preliminary determination of the necessity for executive session**. No other business shall be transacted until the discussion of the nature of the matter requiring executive session has been completed and **a vote, as required in subsection (1) hereof, has been taken on the issue.**

(3) **An executive session shall be limited to matters allowed to be exempted from open meetings by subsection (4) of this section. The reason for holding such an executive session shall be stated in an open meeting, and the reason so stated shall be recorded in the minutes of the meeting.** Nothing in this section shall be construed to require that any meeting be closed to the public, nor shall any executive session be used to circumvent or to defeat the purposes of this chapter.

(4) A public body may hold an executive session pursuant to this section for one or more of the following reasons:

(a) Transaction of business and discussion of personnel matters relating to the job performance, character, professional competence, or physical or mental health of a person holding a specific position.

(b) Strategy sessions or negotiations with respect to prospective litigation, litigation or issuance of an appealable order when an open meeting would have a detrimental effect on the litigating position of the public body.

(c) Transaction of business and discussion regarding the report, development or course of action regarding security personnel, plans or devices.

(d) Investigative proceedings by any public body regarding allegations of misconduct or violation of law.

(e) Any body of the Legislature which is meeting on matters within the jurisdiction of such body.

(f) Cases of extraordinary emergency which would pose immediate or irrevocable harm or damage to persons and/or property within the jurisdiction of such public body.

(g) Transaction of business and discussion regarding the prospective purchase, sale or leasing of lands.

(h) Discussions between a school board and individual students who attend a school within the jurisdiction of such school board or the parents or teachers of such students regarding problems of such students or their parents or teachers.

(i) Transaction of business and discussion concerning the preparation of tests for admission to practice in recognized professions.

(j) Transaction of business and discussions or negotiations regarding the location, relocation or expansion of a business or an industry.

(k) Transaction of business and discussions regarding employment or job performance of a person in a specific position or termination of an employee holding a specific position. The exemption provided by this paragraph includes the right to enter into executive session concerning a line item in a budget which might affect the termination

of an employee or employees. All other budget items shall be considered in open meetings and final budgetary adoption shall not be taken in executive session.

(l) Discussions regarding material or data exempt from the Mississippi Public Records Act of 1983 pursuant to Section 25-11-121.

(5) **The total vote on the question of entering into an executive session shall be recorded and spread upon the minutes of such public body.**

(6) Any such vote whereby an executive session is declared shall be applicable only to that particular meeting on that particular day.

Miss. Code Ann. § 25-41-7 (emphasis added).

48. The CSA and the School Board violated the Mississippi Open Meeting Act and failed to follow the procedures outlined under Mississippi law for going into an executive session closed to the public.

49. Moreover, none of the exceptions outlined under the Mississippi Open Meeting Act for going into closed executive session existed.

50. Though it was without any legal authority to do so, the School Board illegally closed their respective hearings to Petitioner and the public, without articulating any exception under the Mississippi Open Meetings Act, as statutorily required, much less a valid one.

### Count IV: Request for Declaratory Judgment

51. Under Rule 57 of the Federal Rules of Civil Procedure, Petitioners are entitled to a declaratory judgment that Defendants have violated the Mississippi Public Meetings Act, and that the deliberations and votes taken by Defendants in secrecy and other Commissioners and Board Members are invalid, and violate due process.

52. Further, for the reasons set forth herein, and particularly Sections II, III, IV.A and IV.B, Petitioners are also entitled to a declaratory judgment that Defendants' policies, procedures, hearings, and actions have violated Portioners' rights under the Due Process Clause.

WHEREFORE, PREMISES CONSIDERED, the Petitioners request the Court grant it the relief it seeks herein.

RESPECTFULLY SUBMITTED, this the 4th day of August, 2021.

/s/ Clarence Webster, III
Clarence Webster, III (MS Bar No. 102111)
Michael C. Williams (MS Bar No. 104537)
Stevie F. Rushing (MS Bar No. 105534)

**ATTORNEYS FOR PETITIONERS**

OF COUNSEL:

BRADLEY ARANT BOULT CUMMINGS LLP
Suite 1000, One Jackson Place
188 East Capitol Street
Post Office Box 1789
Jackson, Mississippi 39215-1789
Telephone: (601) 948-8000
Facsimile: (601) 948-3000
cwebster@bradley.com
srushing@bradley.com
mcwilliams@bradley.com

## VERIFICATION

STATE OF  Mississippi
COUNTY OF  Holmes

PERSONALLY APPEARED BEFORE ME, the undersigned Notary Public in and for the state and county aforesaid, Earsie Simpson, who stated on oath that I have personal knowledge of, and am competent to testify about, all of the matters set out in the foregoing *Verified Complaint and Petition for Declaratory Judgment*.

_Earsie S. Simpson_   08-04-2021

_Betty Bridgeford_   08-04-2021

[Notary Seal: BETTY BRIDGEFORD, NOTARY PUBLIC, ID No. 209292, Commission Expires Jun 29, 2024, STATE OF MISSISSIPPI, HOLMES COUNTY]

## VERIFICATION

STATE OF Mississippi
COUNTY OF Holmes

PERSONALLY APPEARED BEFORE ME, the undersigned Notary Public in and for the state and county aforesaid, Louise Winters, who stated on oath that I have personal knowledge of, and am competent to testify about, all of the matters set out in the foregoing *Verified Complaint and Petition for Declaratory Judgment.*

*Louise Winters*  08/04/21

*Betty Bridgeford*  08/04/21

BETTY BRIDGEFORD
NOTARY PUBLIC
ID No. 209292
Commission Expires
Jun 29, 2024
STATE OF MISSISSIPPI
HOLMES COUNTY

**VERIFICATION**

STATE OF Mississippi
COUNTY OF Holmes

PERSONALLY APPEARED BEFORE ME, the undersigned Notary Public in and for the state and county aforesaid, Debra Powell, who stated on oath that I have personal knowledge of, and am competent to testify about, all of the matters set out in the foregoing *Verified Complaint and Petition for Declaratory Judgment.*

_[signature]_  08/04/2021

_[signature]_

Betty Bridgeford  08/04/2021

[Notary Seal: BETTY BRIDGEFORD, NOTARY PUBLIC, ID No. 209292, Commission Expires Jun 29, 2024, STATE OF MISSISSIPPI, HOLMES COUNTY]

## VERIFICATION

STATE OF Mississippi
COUNTY OF Holmes

PERSONALLY APPEARED BEFORE ME, the undersigned Notary Public in and for the state and county aforesaid, Anthony Anderson, who stated on oath that I have personal knowledge of, and am competent to testify about, all of the matters set out in the foregoing *Verified Complaint and Petition for Declaratory Judgment.*

*Anthony Anderson*     08/04/21

*Betty Bridgeford*     08/04/21

BETTY BRIDGEFORD
NOTARY PUBLIC
ID No. 209292
Commission Expires
Jun 29, 2024
STATE OF MISSISSIPPI
HOLMES COUNTY