# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**HOLMES COUNTY CONSOLIDATED SCHOOL DISTRICT,**  **PETITIONERS**
**DEBRA POWELL, SUPERINTENDENT, AND**
**HOLMES COUNTY CONSOLIDATED SCHOOL DISTRICT**
**BOARD OF TRUSTEES, NAMELY LOUISE LEWIS WINTERS,**
**BOARD PRESIDENT, EARSIE L. SIMPSON, VICE-PRESIDENT,**
**AND ANTHONY ANDERSON**

**VS.**      **CIVIL ACTION NUMBER 3:21-cv-508-DPJ-FKB**

**MISSISSIPPI DEPARTMENT OF EDUCATION,**  **RESPONDENTS**
**MISSISSIPPI STATE BOARD OF EDUCATION,**
**STATE COMMISSION ON SCHOOL ACCREDITATION,**
**ROSEMARY AULTMAN, CHAIR OF THE STATE**
**BOARD OF EDUCATION, PAMELA MANNERS, CHAIR OF THE**
**STATE COMMISSION ON SCHOOL ACCREDITATION,**
**DR. CAREY WRIGHT, STATE SUPERINTENDENT**
**OF EDUCATION, THE MISSISSIPPI STATE BOARD OF**
**EDUCATION AND GOVERNOR JONATHON TATE REEVES**

---

## STATE DEFENDANTS' RESPONSE IN OPPOSITION TO THE
## AMENDED PETITION FOR EMERGENCY WRIT OF MANDAMUS

---

Defendants, Mississippi Department of Education ("MDE"); Mississippi State Board of

Education ("SBE"), State Commission on School Accreditation ("CSA"), Rosemary Aultman,

Chair of the SBE, Pamela Manners, Chair of the CSA, Dr. Carey Wright, State Superintendent of

Education, the Mississippi State Board of Education, and Governor Jonathon Tate Reeves

("Governor Reeves") (collectively "State Defendants"), submit their Response in Opposition to

the  Amended Petition for Emergency Writ of Mandamus ("Amended Petition") [16].[1]

---

[1] The Holmes County Consolidated School District is referred to as the "former" Holmes County Consolidated School District; Dr. Powell as the "former" Superintendent of the Holmes County Consolidated School District; and Louise Simpson, and Anthony Anderson are referred to as the "former" Holmes County Consolidated School District Board of Trustees.  Under Mississippi law, on August 5, 2021, when Governor Reeves issued his Proclamation that a state of extreme emergency existed at the Holmes County Consolidated School District, the Proclamation abolished the District, Board, and Superintendent.  Therefore, the District no longer exists.

# I. INTRODUCTION

The sole issue for the Court's consideration is whether Petitioners are entitled to mandamus relief in the form of an order compelling Governor Reeves to rescind a validly executed Proclamation committed to his sole discretion as the Chief Executive under state law.[2] Despite Petitioners attempt to obfuscate this threshold question; the answer is an unqualified – no.  In fact, Petitioners do not challenge the fact that Governor Reeves has the sole discretion whether to accept the non-binding recommendation from the SBE and issue a Proclamation declaring a state of emergency in the former Holmes County Consolidated School District.  On this basis alone the Amended Petition should be denied.

More broadly, however, the Amended  Petition is also foreclosed by the Eleventh Amendment. Although  Governor Reeves was named as a respondent in the Emergency Verified Petition ("Verified Petition"), Petitioners neither asserted claims nor sought relief against him [1]. Petitioners do not allege any ongoing violation on the part the Governor [17]. Instead, the act for which Petitioners seek mandamus – Governor Reeves's emergency Proclamation – is wholly retroactive.  Petitioners do not allege on-going violations of federal law on the part of Governor Reeves, or MDE for that matter, nor seek prospective injunctive relief on the basis of federal law necessary to implicate the *Ex parte Young*[3] exception to Eleventh Amendment immunity.

Instead, Petitioners seek an order directing Governor Reeves to conform his conduct under state law – not federal. ("Petitioners respectfully move the Court to enter a Writ of Mandamus that (1) orders Respondent Jonathon Tate Reeves to rescind his August 5, 2021 proclamation") [16], p. 1.  Governor Reeves's discretionary authority to issue such a proclamation is derived solely on the basis of  state law. A mandamus order of the nature sought by Petitioners is categorically foreclosed by *Pennhurst State*

---

[2] Petitioners also seek an order directing "Respondents to take no further action in reliance on the August 5, 2021 proclamation." [16], p. 1.

[3]  209 U.S. 123 (1908).

*School & Hospital v. Halderman*, 465 U.S. 89, 106 (1984) ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law").[4]  "'[T]he determinative question [under *Pennhurst*] is not the relief ordered, but whether the relief was ordered pursuant to state or federal law.'" *Williams On Behalf of J.E. v. Reeves*, 954 F.3d 729, 741 (5th Cir. 2020) (quoting *Brown v. Ga. Dep't of Revenue*, 881 F.2d 1018, 1023 (11th Cir 1989)). Because Petitioners Amended Petition seeks to compel state officials to comply with a specific state law, it is barred by *Pennhurst* and invalid under *Ex parte Young*.

Despite seeking mandamus against Governor Reeves for his discretionary act of issuing the emergency Proclamation, Petitioners devote considerable space arguing about the events leading up to the SBE's non-binding recommendation to the Governor.  The fact remains, however, that Governor Reeves was at all times free to accept or reject the SBE's non-binding recommendation to declare a state of emergency as Governors have done in the past. Thus, these allegations create no basis upon which to order Governor Reeves to rescind a discretionary order authorized under state law declaring a state of emergency in a school district.

In summation, Petitioners suggest that "[t]he All Writs At was enacted to address [sic] situation like this" and that Governor Reeves was somehow dispossessed of his discretionary authority under state law to declare a state of emergency by the mere filing of the Verified Petition  [17] p. 22. Yet Petitioners cite no authority authorizing mandamus retroactively against a Governor exercising his discretionary authority under  state law.  Nor do Petitioners support the argument that Governor Reeves "frustrat[ed] the jurisdiction of this Court . . ." by issuing the Proclamation after the Petitioners filed the Verified Petition.  *Id.*  In the end, Governor Reeves has the sole discretion under state law to determine whether a state of emergency exists in school district.  As such, the Amended Petition must be denied.

---

[4] Petitioners also seek mandamus relief on the basis that the SBE violated the Open Meetings Act, Miss. Code Ann. § 25-41-1 (Rev. 2010).  This claim is also barred under *Pennhurst*.

## II. PROCEDURAL HISTORY

Petitioners are the former Holmes County Consolidated School District; Dr. Debra Powell, the former Superintendent of the Holmes County Consolidated School District; and the former members of the Holmes County Consolidated School District Board of Trustees (hereafter collectively referred to as "the District").  The Petitioners named the MDE, the SBE, CSA, Rosemary Aultman, the Chair of the SBE, Pamela Manners, the Chair of the CSA,  Dr. Carey Wright, the State Superintendent of Education, and Governor Tate Reeves as Defendants.

The Petitioners initially brought their case before this Court on August 4, 2021 seeking a declaratory judgment[5] that their procedural Due Process rights had been violated by the CSA's  and MDE's  decision to recommend to Governor Reeves that an extreme emergency existed in the Holmes County Consolidated School District which jeopardized the safety, security, and educational interests of the children enrolled in the school district[1].   On August 5, 2021, Petitioners filed a Motion for Temporary Restraining Order [2].

On August 5, 2021, Governor Reeves issued the Proclamation declaring a state of emergency in the school district. The Petitioners then filed for an "Urgent and Necessitous Writ of Mandamus" requesting that this Court order Governor Reeves to rescind his Proclamation and that the State Defendants take no further action under the authority of that Proclamation [6].  This Court asked the Petitioners and State Defendants to brief the issue of whether this Court had authority to consider the issues now before it.[6]

---

[5] The Petitioners styled their initial pleading, "Emergency Verified Petition for Injunctive Relief, Declaratory Judgment, and Complaint for Discovery."  However, an examination of the pleading reveals that the Petitioners did not request *any* injunctive relief but only a prayer for various declaratory relief.

[6] Contrary to the Court's order that the Petitioners and State Defendants brief the issue of the Court's authority to consider the issues before it, the Petitioners filed an "Amended Petition for Emergency Writ of Mandamus." [16]. The Petitioners have filed a "Brief in Support of Emergency Petition for Writ of Mandamus" in which they raised a myriad of factual issues, all of which are denied by the State Defendants, that go well beyond the Court's

As an initial matter, before this Court can hear any of the Petitioners' claims, the Court first must satisfy itself that it has subject matter jurisdiction over this case.   As discussed below, the State Defendants assert that this Court does not have subject matter jurisdiction of the matter now before it because the Eleventh Amendment of the United States Constitution bars Complaints against the State Defendants in federal district court.

Even if the court determines for some reason that the Eleventh Amendment does not bar the relief sought, the fact remains that Petitioners cannot overcome the extremely high threshold for mandamus. The writ of mandamus is an extraordinary remedy that should be reserved for the most extreme cases. In the case now before this Court, the Petitioners have totally failed to establish the necessary elements for a writ of mandamus.   Specifically, the Petitioners seek a writ of mandamus related to a discretionary act committed by Governor Reeves.   Federal and Mississippi law does not allow for a writ of mandamus to be issued against a sitting Governor who has exercised his discretion pursuant to a State statute.

Finally,  the Petitioners' claims of procedural Due Process violations must fail as a matter of law. In order to assert a claim of a violation of Due Process, the Petitioners must first establish the existence of a protected property interest.   Petitioners fundamentally mischaracterize the nature of their alleged property interest in this case.   Moreover, contrary to their claims, the Petitioners have received all due afforded  by law.   The Petitioners have suffered no deprivation of constitutional rights.

### III.  RELEVANT FACTS

On July 26, 2021, the Mississippi Department of Education issued the "*On-Site Investigative Audit Report*" ("Audit Report") for the Holmes County Consolidated School District.  *See Exhibit 1*, *July 26, 2021, Letter from Dr. Jo Ann Malone*, Executive Director, Office of Accreditation, Mississippi Department of Education, to Dr. Debra Powell, Superintendent of the Holmes County Consolidated

---

order. [17]. In this response, the State Defendants will only address the factual allegations asserted by the Petitioners to the extent that those issues pertain to the Court's authority to consider this matter.

School District, and Ms. Louise Winters, President of the Holmes County Consolidated School Board. Dr. Malone advised Dr. Powell and Ms. Winters that the District was in violation of twenty-six (26) of the thirty-two (32) process standards. *Id.* Dr. Malone stated that the Mississippi Department of Education Office of Accreditation would present evidence to the CSA on August 2, 2021, to determine whether there was sufficient cause to believe that an extreme emergency situation existed in the Holmes County Schools which jeopardized the safety, security, or educational interests of the children in the schools of the district under Mississippi Code Annotated Section 37-17-6(12)(b). *Id.*

The CSA convened on August 2, 2021, and, following presentations by the MDE and closing arguments from counsel, the CSA passed the following Resolution:

> The Commission finds that there is sufficient cause to believe that an extreme emergency situation exists in the Holmes County Consolidated School District brought on by serious findings related to serious violations of federal and state law and accreditation standards, serious concerns regarding financial resources, inappropriate standards of governance, a continued pattern of poor academic performance, and the failure to comply with standards that sustain a safe school climate, which jeopardizes the safety, security, and educational interests of the children enrolled in the schools of this district, and which, without intervention by the Commission on School Accreditation and the Mississippi Board of Education, could result in the continuation of an inadequate and unstable educational environment thereby denying the students of this district the opportunity to learn, to excel, and to obtain a free and appropriate public education.

*See Exhibit 2, August 2, 2021, CSA Resolution.*

The SBE met on August 3, 2021, to determine whether there was sufficient cause to believe that an extreme emergency situation existed in the school district that jeopardized the safety, security, or educational interests of the children enrolled in the schools of the district. Following presentations by the MBE and closing arguments by counsel, the SBE adopted a Resolution which states, in part, that:

> The Board finds that there is sufficient cause to believe that an extreme emergency situation exists in the Holmes County Consolidated School District brought on by serious violations of state and federal law and accreditation standards, serious concerns regarding financial resources and lack of internal controls, inappropriate oversight by the local board, a continued pattern of poor academic performance, and the failure to sustain a safe school climate which jeopardizes the safety, security, and educational interests of the children

enrolled in the schools of this district, and which, without intervention by the Commission on School Accreditation and the State Board of Education, could result in the continuation of an inadequate and unstable educational environment thereby denying the students of this district the opportunity to learn, to excel, and to obtain a free and appropriate public education.

*See Exhibit 3, August 3, 2021, SBE Resolution.*  The SBE Resolution also provided, in accordance with Section 37-17-6(12)(b), that:

> **BE IT RESOLVED THAT,** based upon the extreme emergency situation that exists in the Holmes County Consolidated School District which jeopardizes the safety, security, and education interests of the children enrolled in the schools of the District and such emergency is believed to be related to serious violations of state and federal law and accreditation standards, serious concerns regarding financial resources and lack of internal controls, inappropriate standards of governance, inappropriate oversight by the local board, a continued pattern of poor academic performance, and the failure to sustain a safe school climate, which, without the intervention of the State Board of Education, could result in the continuation of the inadequate and unstable educational environment, thereby denying the students of the District the opportunity to learn, to excel, and to obtain a free and appropriate public education, the State Board of Education does hereby request of the Honorable Tate Reeves, Governor of the State of Mississippi, that a state of emergency be declared effective immediately in the Holmes County Consolidated School District pursuant to Miss. Code Ann. §37-17-6(12)(b).

*Id.*  Governor Reeves had the sole discretion to declare a state of emergency in the  District following the SBE's non-binding request in the August 3, 2021, Resolution.  *See* MISS. CODE ANN. § 37-17-6(12)(b) *See Exhibit 4*, Proclamation.[7]  He exercised that discretion on August 5, 2021, proclaiming a state of emergency in the District.  The Petitioners now seek to have this Court rescind the Governor's proclamation.[8]

---

[7] In addition to Miss. Code Ann. § 37-17-6(12)(b), Governor Reeve's discretionary authority to declare a state of emergency in the District arises from his general powers as the chief executive of the State pursuant to Article 5, Sections 116 and 123 of the Mississippi Constitution of 1890; and Governor Reeves relied on this broad grant of authority in addition to Miss. Code Ann. § 37-17-6(12)(b) in declaring the emergency.  *See* Proclamation at pg. 2.

[8] In their original Petition, the Petitioners sought review of the CSA's and MDE's actions and resolutions. However, non-binding requests asking the Governor to consider taking action are neither final rules, regulations, or orders. The requests did not alter the legal rights of the District as neither the SBE nor the CSA have authority to declare an emergency.  The Governor retains exclusive discretion to utilize his independent judgment to reject

## IV.  LAW AND ARGUMENT

**A.     The Eleventh Amendment of the United States Constitution Deprives This Court of Subject Matter Jurisdiction Over the Matter Now Before It**

Because a federal court is a court of limited jurisdiction, a Plaintiff must make clear, distinct, and precise affirmative jurisdictional allegations in their pleadings. ***Laufer v. Mann Hospitality, LLC,*** 996 F.3d 269, 271 (5th Cir. 2021); ***Midcap Media Finance, LLC v. Pathway Data, Inc.,*** 929 F.3d 310, 313 (5th Cir. 2019); ***Getty Oil Corporation v. Insurance Company of North America,*** 841 F. 2d 1254, 1259 (5th Cir. 1988).   The court must take the well-pled factual allegations of the Complaint as true and view them in the light most favorable to the Plaintiff. ***Lane v. Halliburton,*** 529 F.3d 548, 557 (5th Cir. 2008); ***In re Katrina Canal Breaches Litigation,*** 495 F.3d 191, 205 (5th Cir. 2007).  Examining the Petitioners' pleadings under this standard, the Petitioners have failed to establish that the Court has subject matter jurisdiction to hear this matter.

The Eleventh Amendment of the United States Constitution provides:

> The Judicial power of the United States shall not be construed to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens or another State, or by Citizens or Subjects of any Foreign State.

The Eleventh Amendment grants a state immunity from suit in federal courts by citizens of other States and by its own citizens. ***Lapides v. Board of Regents of the University System of Georgia,*** 535 U.S. 613, 616; 122 S. Ct. 1640 (2002); ***Doe v. University of Mississippi,*** 361 F. Supp. 3d 597, 604 (S.D. Miss. 2019); ***Campaign for Southern Equality v. Mississippi Department of Human Services,*** 175 F.

---

or act on the request.  MISS. CODE ANN. §37-17-6(12)(b).  The requests themselves are not an appealable final action because "the substantial rights of the parties involved in the action remain undetermined" and "the cause is retained for further action" by the Governor. ***See Freeman Truck Line, Inc. v. Merchants Truck Line, Inc.,*** 604 So. 2d 223, 224 (Miss. 1992); ***Bay St. Louis Community Association v. Commission on Marine Resources***, 729 So. 2d 796,798-99 (Miss. 1998).  Federal courts addressing the similar issue of non-binding agency requests made to the chief executive are not subject to judicial review. ***Dalton v. Specter***, 511 U.S. 462,469-70 (1994); ***Chicago & Southern Air Lines v. Waterman S.S. Corp.***, 333 U.S. 103, 112-13 (1948); ***Utah Association of Counties v. Bush***, 316 F. Supp.2d 1172, 1189 (D. Utah 2004).

Supp. 3d 691, 708 (S.D. Miss. 2016).  The Eleventh Amendment bars both federal and state law claims asserted against a State in federal court.  *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 119-21; 104 S. Ct. 900 (1984); *Hayes v. Laforge,* 113 F. Supp. 3d 883, 891 (N.D. Miss. 2015).  The Eleventh Amendment bars suit against a state entity regardless of whether money damages or injunctive relief is sought.  *Voison's Oyster House, Inc. v. Guidry,* 799 F. 2d 183, 186 (5th Cir. 1986); *University of Mississippi,* 361 F. Supp. 3d at 604.  The Eleventh Amendment bars suits against the state for legal or equitable relief, absent state consent.  *Pennhurst,* 465 U.S. at 100–101.  This bar specifically applies to suits for equitable relief, *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974), suits for injunctive relief, *Cory v. White*, 457 U.S. 85, 91, 102 S.Ct. 2325, 2329, 72 L.Ed.2d 694 (1982), and suits for mandamus. *State v. Jumel*, 107 U.S. 711, 727, 2 S.Ct. 128, 141, 27 L.Ed. 448 (1882) (emphasis supplied).

Eleventh Amendment immunity extends to state agencies, officials, and employees when the state is the real, substantial party in interest.  *Pennhurst,* 465 U.S. at 100; *Edelman,* 415 U.S. at 663.  The bar regarding suits against a state entity in federal court is jurisdictional.  *Nigen Biotech, LLC v. Paxton,* 804 F.3d 389, 393-94 (5th Cir. 2015); *Moore v. Louisiana Board of Elementary and Secondary Education,* 743 F.3d 959, 963 (5th Cir. 2014).  Restated, if the Eleventh Amendment is applicable, a federal court is without jurisdiction to hear the matter.

The Eleventh Amendment also bars suits by private citizens against a State and state officers in federal court. Official capacity lawsuits "generally represent only another way of pleading an action against an entity of which an officer is an agent," *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (internal quotations omitted) (quoting *Kentucky v. Graham,* 473 U.S. 159, 165 (1985)), accordingly, the Eleventh Amendment bar extends to suits against state actors sued in their official

capacities. *See KP v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010) (citing *Hutto v. Finney*, 437 U.S. 678, 700 (1978); *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004).

The Eleventh Amendment extends its cloak of immunity to any official-capacity claims against Dr. Wright, Ms. Aultman, and Ms. Manners in their official capacities, including the claim. *Chrissy F. by Medley v. Mississippi Dept. of Public Welfare*, 925 F.2d 844, 849 (5th Cir. 1991); Moore, No. 1:15-CV-13-DMB-DAS, 2016 WL 5477673 (dismissing official capacity claims).

In the case now before this Court, there is no claim that the State consented to suit or that the individual State Defendants acted in any way other than in their official capacities. Petitioners do not allege an ongoing violation of federal law on the part of the State Defendants.

B.     *Ex Parte Young*

The logic of *Ex Parte Young* was motivated by a recognition of, and allegiance to, federal law as the supreme law of the United States. *Carpenter v. Mississippi Valley State Univ.*, 807 F. Supp.2d 570, 580 (N.D. Miss. 2011); *Va. Office for Protection & Advocacy*, 131 S. Ct. 1632, 1638 (2011); *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 293 (1997) ("*Ex Parte Young* gives life to the Supremacy Clause."). Following this logic, the premise of *Ex Parte Young* is clear. The exception applies <u>only</u> when "relief that serves directly to bring an end to a present violation of federal law" is sought. *Papasan v. Allain*, 478 U.S. 265, 278 (1986); *Pennhurst State School*, 465 U.S. at 102.

*Ex Parte Young* focuses on cases in which a violation of federal law by a state official is <u>ongoing</u> as opposed to cases in which federal law has been allegedly violated at one time or over a period of time in the past. To determine whether *Ex Parte Young* applies, "a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Va. Office for Prot. & Advocacy v. Stewart*, 131 S. Ct. 1632, 1639 (2011) (internal quotation marks omitted); *see also Cantu Services, Inc. v. Roberie*, 535 Fed. Appx. 342, 344-

45 (5th Cir. 2013); ***Blount v. Mississippi Dep't of Human Servs.,*** 2015 WL 59091, at *2 (S.D. Miss. Jan. 5, 2015). Petitioners' claims fail that test.

First, Petitioners do not allege an ongoing violation of federal law. Second, Plaintiffs do not seek relief that can be characterized as prospective. Governor Reeves issued the Proclamation declaring a state of emergency in the school district on August 5, 2021 based solely on state – not federal law. In ***Green v. Mansour,*** 474 U.S. 64, 68 (1985) the Court said that "[w]e have refused to extend the reasoning of ***Young***, [ ], however, to claims for retrospective relief. *Id.* (citing ***Pennhurst,*** 465 U.S. at 102-103; ***Quern v. Jordan***, 440 U.S. 332, 337 (1979); ***Edelman v. Jordan***, 415 U.S. 651, 668 (1974)).

The Petitioners seek a writ of mandamus ordering Governor Tate Reeves to rescind his August 5, 2021, Proclamation that an extreme emergency existed in the Holmes County Consolidated School District. Governor Reeves issued the Proclamation in his role as Governor. The Eleventh Amendment deprives this Court of subject matter jurisdiction. Absent subject matter jurisdiction over this case, this Court should dismiss this matter.

## C.    The Court Cannot Issue a Writ of Mandamus Against the Governor Related to a Discretionary Act

Courts have recognized that the writ of mandamus is a drastic and extraordinary remedy reserved for extraordinary cases. ***In re J.P. Morgan Chase and Company,*** 916 F.3d 494, 499 (5th Cir. 2019); ***In re Depuy Orthopaedics, Inc.,*** 870 F.3d 345, 350 (5th Cir. 2017). Because mandamus is one of the most potent weapons in the judicial arsenal, three conditions must be satisfied before it may issue. ***Cheney v. United States District Court for D.C.,*** 542 U.S. 367, 380; 124 S. Ct. 2576 (2004). The Supreme Court has explained:

> First, the party seeking issuance of the writ [must] have no other adequate means to attain the relief he desires—a condition designed to ensure that the writ will not be used as a substitute for the regular appeals process. Second, the petitioner must satisfy the burden of showing that [his] right to issuance of the writ is clear and indisputable. Third, even if the first two prerequisites have been met, the issuing

court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances.

*Cheney,* 542 U.S. at 367.

The Petitioners rely upon the All Writs Act when asserting that this Court may issue a writ of mandamus in this matter. It is true that the All Writs Act provides that federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. §1651. However, the All Writs Act is not a jurisdictional blank check but is only appropriate to issue writs in cases where federal jurisdiction already exists. *United States v. New York Telephone Company,* 434 U.S. 159, 172; 98 S. Ct. 364, 372 (1977); *Sims v. Shell Oil Company,* 130 F. Supp. 2d 788, 790 (S.D. Miss. 1999). Because the All Writs Act is not a jurisdictional blank check, the Petitioners must establish a basis for federal jurisdiction apart from the All Writs Act. As stated above, it is facially apparent from the Petitioner's petition that the Eleventh Amendment deprives this Court of subject matter jurisdiction. Without subject matter jurisdiction, the Petitioners cannot seek a writ of mandamus pursuant to the All Writs Act.

In the case now before this Court, the Petitioners cannot show that their right to the issuance of mandamus against Governor Reeves is clear and indisputable for it is clear and indisputable that the common-law writ of mandamus (now codified in 28 U.S.C. §1361) is only intended to provide a remedy for a plaintiff if a defendant owes him a clear nondiscretionary duty. *Heckler v. Ringer,* 466 U.S. 602, 616, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984); *Einhorn v. Dewitt,* 618 F. 2d 347, 349 (5th Cir. 1980). Restated, mandamus is not available to review discretionary acts. *Randall D. Walcott, MD, PA v. Sebelius,* 635 F.3d 757, 768 (5th Cir. 2011); *Giddings v. Chandler,* 979 F. 2d 1104, 1108 (5th Cir. 1992); *Helfgott v. United States,* 891 F. Supp. 327, 331 (S.D. Miss. 1994).

The proposition that a writ of mandamus may not issue to compel an executive officer to perform a discretionary act is nearly as old as the Country itself. *Marbury v. Madison,* 1 Cranch,

137, 158, 161; 2 L.Ed. 60 (1803); ***Kendall v. United States***, 12 Pet. 524, 613; 9 L.Ed. 1181 (1838);

***United States v. Schurz,*** 102 U.S. 378, 26 L.Ed. 167 (1880); ***Decatur v. Paulding***, 14 Pet. 497,

514, 516; 10 L.Ed. 559 (1840); ***United States Black,*** 128 U.S. 40, 48, 9 Sup.Ct. 12 (1888); ***United***

***States v. Guthrie,*** 17 How. 284, 15 L.Ed. 102 (1854).   In ***Walsh v. Scott,*** 2012 WL 3240789 (N.D.

Fla. 2012), the United States District Court for the Northern District of Florida, succinctly summarized

the jurisprudence regarding mandamus against state officials.   The ***Walsh*** court noted:

> The following rules regarding mandamus have evolved, dating back to ***Marbury v.
> Madison,*** 1 Cranch 137, 158; 2 L. Ed. 60 (1803):  (1) a writ of mandamus may lawfully
> issue, from a court having jurisdiction, to compel an executive officer to perform a mere
> ministerial act, which does not call for the exercise of his judgment or discretion, but
> which the law gives him the power and imposes upon him the duty to do. (2) It may issue
> to command an executive officer in the discharge of those of his duties which involve the
> exercise of his judgment or discretion either in the construction of the law, or in
> determining the existence or effect of the facts; (3) it may not lawfully issue to review,
> reverse, or correct the erroneous decisions of an executive officer in such cases, even
> though there may be no other method of review or correction provided by law."
> ***Kimberlin v. Comm.'n for Five Civilized Tribes,*** 104 F. 653, 658 (8th Cir. 1900) (internal
> citations omitted).  ***Cf. 28 U.S.C. §1361*** (granting original jurisdiction in the nature of
> mandamus to compel an officer of the United States to perform a duty owed. "Mandamus
> will not lie to correct mere abuses of discretion."  ***See In re Evans,*** 524 F. 2d 1004, 1007
> (5th Cir. 1975).

***Walsh,*** 2012 WL 3240789 at n.1.

In ***Walsh*** the petitioner, a Canadian citizen, was imprisoned in Colorado pursuant to a Florida

conviction but sought to serve his sentence in Canada by virtue of a treaty**.  *Id.*** at *1.  Florida's Governor

denied the petition.  The petitioner asserted the treaty's language created limits on the Governor's

discretion whether or not to grant the transfer to Canada.  ***Id.***  In rejecting this argument, the court said,

> To the extent this language applies to the Governor as decisionmaker, it is devoid of any
> specific directive that would dictate a particular outcome in any particular set of
> circumstances.  No limit is placed on the type of factors that may be considered other
> than a general directive to consider the best interests of the offender, which, in fact, does
> not limit discretion but invites a broad exercise of discretion. The language creates no
> limits on discretion that could amount to a procedural protection nor does it create a
> substantive expectation of transfer.

*Id.  See also Gaines v. Thompson,* 74 U.S. 347, 348, 19 L. Ed. 62 (1868) (courts have no power to compel, by mandamus, an executive officer to perform an act which is discretionary with him); *Felix v. Gov't of the Virgin Islands,* 167 F. Supp. 702, 707, 3 V.I. 399, 408 (D. V.I. 1958) (Governor's discretionary and political power as head of the executive branch is final and unreviewable). Analyzing Governor Reeves' Proclamation that an extreme emergency situation existed in the former Holmes County Consolidated School District, the Governor's Proclamation clearly was a totally discretionary act.  Mississippi statutory law establishes the procedures in which the Governor can declare an extreme emergency within a school district.  Mississippi law provides:

> If the State Board of Education and the Commission on School Accreditation determine that an extreme emergency situation exists in a school district that jeopardizes the safety, security or educational interests of the children enrolled in the schools in that district and that emergency situation is believed to be related to a serious violation or violations of accreditation standards or state or federal law, or when a school district meets the State Board of Education's definition of a failing school district for two (2) consecutive full school years, or if more than fifty percent (50%) of the schools within the school district are designated as Schools At-Risk in any one (1) year, **the State Board of Education may request the Governor to declare a state of emergency in that school district.**   (Emphasis added).

Miss. Code Ann. §37-17-6(12)(b).  The statute then states, "***whenever*** the Governor declares a state of emergency in a school district in response to a request made under paragraph (a) or (b). . ."  The statute does not mandate that the Governor must declare a state of emergency, only that whenever the Governor makes the proclamation, the SBE  may take certain actions.  Governors are free to accept or reject the SBE's  and the CSA's  recommendations.  At least one Governor has rejected the SBE's and the CSA's recommendations related to a school district.  In 2017, Governor Phil Bryant rejected the SBE's  and the CSA's recommendations to declare a state of emergency in the Jackson Public School District.[9]

---

[9]   *See*  https://mississippitoday.org/2017/10/26/gov-bryant-orders-independent-review-of-jackson-public-schools/ (last accessed 8/13/2021).  In that instance, the SBE issued a non-binding recommendation to the Governor requesting that he declare a state of emergency in the Jackson Public  School District.  Governor Bryant exercised his discretion and did not declare a state of emergency in the school district.

Federal courts have also held that federal district courts do not have jurisdiction to issue a writ of mandamus against a state actor or agency where mandamus is the only relief sought. *Ochoa v. Collier,* 802 Fed. Appx. 101, 105 (5th Cir. 2020); *Kirkland Masonry, Inc. v. C.I.R.,* 614 F. 2d 532, 534 (5th Cir. 1980); *Moye v. Clerk, DeKalb County Sup. Court,* 474 F.2d 1275, 1275–76 (5th Cir.1973).  These cases support that the Petitioners' request that this Court issue a writ of mandamus is neither clear nor indisputable.

The Mississippi Supreme Court has addressed whether a writ of mandamus may be issued against the Governor.   The Mississippi Supreme Court has long recognized that a writ of mandamus may not be issued against the Governor "in any case".  *Barbour v. State ex rel Hood,* 974 So. 2d 232, 238 (Miss. 2008); *Fordice v. Thomas,*  649 So. 2d 835, 840 (Miss. 1995); *State v. McPhail,* 180 So. 387, 392 (Miss. 1938); *Broom v. Henry,* 100 So. 602, 603 (1924); *Vicksburg and Meridian Railroad Company v. Lowery,* 61 Miss. 102, 1883 WL 3961 (1883).  These cases further support that the Petitioners' request for this Court to issue a writ of mandamus is far from clear and indisputable.  The Mississippi Supreme Court has said "[d]espite the *Marbury* Court's declaration of its "emphatic" duty to interpret the Constitution, Chief Justice Marshall cautioned:

> The province of the court is, solely, to decide on the rights of individuals, not to enquire how the executive, or executive officers, perform duties in which they have a discretion. Questions, in their nature political, or which are, by the constitution and laws, submitted to the executive, can never be made in this court.

*In re Hooker*, 87 So. 3d 401, 405 (Miss. 2012).

In the case now before this Court, the Petitioners cannot prove that they have a clear and indisputable right to a writ of mandamus against the State Defendants.   Governor Reeves' proclamation that an extreme emergency existed at the Holmes County Consolidated School District was a totally discretionary act. Moreover, the SBE's recommendation to Governor was

nonbinding. Because the Proclamation was a discretionary act, mandamus is not appropriate. This Court should dismiss the Petitioners' request for a writ of mandamus.

Petitioners cite ***Harris v. Gibson,*** 322 F.2d 780, 782 (5th Cir. 1963). In ***Harris***, the district court issued a temporary restraining order enjoining the board of education from permitting transfers of African-American students to a formerly all-white school. ***Id.*** at 781. The district court entered an order "styled a 'pretrial order', the effect of which was to continue the temporary restraining order in force to the end of preventing the transfers." ***Id.*** As a result, the board of education could not move forward  with a voluntarily plan of desegregation. ***Id.*** The Fifth Circuit noted that the district court's pretrial order constituted a preliminary injunction and a final order within the meaning of 28 U.S.C. § 1291. ***Id.*** The Fifth Circuit's order was thus directed to the district court and stayed the lower court's injunction pending appeal. ***Id.*** at 782. This did not involve a writ of mandamus, but injunctive relief directed to the district court.

Petitioners rely on ***Ex Parte Young*** stating that "[o]ver 113 years ago, the United States Supreme Court – in an often-cited  case – found federal courts may enjoin a state official from violating the United  States Constitution." [17], p. 7 n.5. But Petitioners do not contend that Governor Reeves, the party against whom they seek mandamus, has or is committing an on-going violation of federal  law.  While Petitioners cite issues regarding the SBE's hearing process, they fail to even mention Governor Reeves in the alleged procedural deficiencies.  [17], pp. 11-21.  In fact, Governor Reeves is mentioned twice in the Petitioners' brief.[10]

In ***Dalton v. Specter***, Supreme Court held that a process leading to a recommendation, which the President could then choose to accept or reject, even if flawed, did not permit of judicial

---

[10]  Governor Reeves is named in the caption and at page 2 of the brief ("Respondent Jonathon Tate Reeves signed a proclamation, effectively dissolving the Holmes County Consolidated School District (HCCSD) and abolishing the Board of Trustees (Board) and Superintendent, Debra Powell") [17], p. 2.  Regardless, Petitioners have not, nor could they, allege any on-going violation of federal law on the part of the Governor.

review pursuant to the federal Administrative Procedures Act since the recommendation *did not constitute final agency action*. 511 U.S. 462, 469–70 (1994) ("The action that 'will directly affect' the military bases is taken by the President . . . .  Accordingly, the Secretary's and Commission's reports serve 'more like a tentative recommendation than a final and binding determination . . . .' The reports are, 'like the ruling of a subordinate official, not final and therefore not subject to review'") (citations omitted).

In ***Chicago & Southern Air Lines v. Waterman S.S. Corp.***, 333 U.S. 103 (1948), plaintiff sought review of a recommendation by the Civil Aeronautics Board to the President who made the final decision. Finding the recommendation unreviewable, the Supreme Court stated that "administrative orders are not reviewable unless and until they impose an obligation, deny a right or fix some legal relationship as a consummation of the administrative process." 333 U.S. at 112-13; *see also Utah Ass'n of Counties,* 316 F. Supp.2d at 1189 ("[f]laws in an agency process leading to a recommendation to the President, that in turn leads to presidential action, do not convert the action of the agency, or that of the President, into action subject to judicial review under the APA"); ***Flue-Cured Tobacco Coop. Stabilization Corp. v. U.S.E.P.A.***, 313 F.3d 852, 861 (4th Cir. 2002) (no right to appeal a request "[e]ven if other agencies have relied on the" recommendation).  "Since (as explained in ***Dalton***) the submission of the Commission's report to the President itself has no conclusive effect, the plaintiff has failed to establish that the act of transmitting the report ought to be restrained." ***Romney v. Rumsfeld***, 2005 WL 2177118 at *2 (D. Mass. Sept. 8, 2005).  Petitioners' alleged procedural claims against the SBE's hearing process do not operate as a basis upon which to support mandamus relief against Governor Reeves.

D.      **The Petitioners Have Been Provided Procedural Due Process**

The Petitioners claim that they were not given procedural due process before Governor Reeves issued his proclamation that an extreme emergency existed at the Holmes County Consolidated School District.  Specifically, the District and Board members maintain that they have a property interest in their offices while Superintendent Powell alleges that she has a property interest in her employment contract.  This Court should reject both of these arguments.

To state a Fourteenth Amendment due process claim a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest.  ***Gentilello v. Rege***, 627 F.3d 540, 544 (5th Cir. 2010); ***Baldwin v. Daniels***, 250 F.3d 943, 946 (5th Cir. 2001).  However, the Board members have no property interest in their elected offices and, therefore, cannot maintain such claim as a matter of law.  ***Snowden v. Hughes***, 321 U.S. 1, 7 (1944); ***Taylor and Marshall v. Beckham***, 178 U.S. 548, 577 (1900); ***Wilson v. Birnberg,*** 667 F.3d 591, 598 (5th Cir. 2012).  *See also* ***McIntosh v. Barbour,*** 2010 WL 5169045, at *4 (N.D. Miss. Dec. 14, 2010) ("It is a well-established principle, however, that public officials do not have a property interest or right to hold elected office.").

Political subdivisions of the State are created by the Legislature, are creatures of the State, and have no constitutional due process rights with respect to actions taken by the State.  ***State v. Hinds Cnty. Bd. of Sup'rs***, 635 So. 2d 839, 843 (Miss. 1994); ***City of Canton v. Nissan N. Am., Inc.***, 870 F. Supp. 2d 430, 438 (S.D. Miss. 2012). By statute, Mississippi school districts are political subdivisions of the State. *See* Miss. Code Ann. § 37-6-5.

Petitioner Powell's claim of a Due Process violation also fails.  It is well established that agency rules must afford minimum procedural Due Process.  ***Phillips Petroleum Company v. Shutts,*** 472 U.S. 797 (1985); ***Davis v. Scherer,*** 468 U.S. 183 (1984); ***Board of Regents v. Roth,***

18

408 U.S. 564 (1972).  Minimal Due Process is defined as (1) notice, and (2) an opportunity to be heard.  *Id.*  Restated, the minimum Due Process requirement an administrative board must afford parties is notice and an opportunity to be heard.  ***Sherman-Oliver v. Public Employees' Retirement System of Mississippi;*** 291 So. 3d 387, 395 (Miss. Ct. App. 2020); ***Booth v. Mississippi Employment Security Commission,*** 588 So. 2d 422, 428 (Miss. 1991).

The Mississippi Public School Accountability Standards more than provides Petitioner Powell with Due Process.  Rule 2.9.2 outlines the procedures for the SBE to conduct a hearing regarding a state of emergency.  The Rule affords a Superintendent an opportunity to be heard during the proceeding.  Even assuming arguendo that Superintendent Powell had a property interest, she  was given an opportunity to be heard before both the CSA and SBE   Superintendent Powell's claim that she was not provided due process is totally without merit.

### V. CONCLUSION

The Petitioners in this case seek to bypass jurisprudence that is nearly as old as the Country itself.  They ask this Court to issue a writ of mandamus when this Court does not have subject matter jurisdiction over this case.  The Petitioners ask this Court to issue a writ of mandamus against Governor Reeves related to a Proclamation that was within his compete discretion to give.  The Petitioners' claim for a writ a mandamus against the Governor is not clear or  indisputable..  Finally, the Petitioners claim that their procedural Due Process rights have been violated when they have not been deprived of any constitutional rights.  Accordingly, the Petitioners' request for

a writ of mandamus against Governor Reeves should be denied and their case before this Court

dismissed.

THIS the 16th day of August, 2021.

Respectfully submitted,

MISSISSIPPI DEPARTMENT OF EDUCATION;
MISSISSIPPI STATE BOARD OF EDUCATION;
STATE COMMISSION ON SCHOOL
ACCREDITATION; ROSEMARY AULTMAN,
CHAIR OF THE STATE BOARD OF
EDUCATION; PAMELA MANNERS, CHAIR OF
THE STATE COMMISSION ON SCHOOL
ACCREDITATION; DR. CAREY WEIGHT,
STATE SUPERINTENDENT OF EDUCATION;
THE MISSISSIPPI STATE BOARD OF
EDUCATION; AND GOVERNOR JONATHON
TATE REEVES, DEFENDANTS

By:    LYNN FITCH, ATTORNEY GENERAL
       STATE OF MISSISSIPPI

By:    s/Gerald L. Kucia
       GERALD L. KUCIA (MSB #8716)
       DREW D. GUYTON (MSB #104451)
       Special Assistant Attorney General

OFFICE OF THE ATTORNEY GENERAL
CIVIL LITIGATION DIVISION
Post Office Box 220
Jackson, Mississippi  39205-0220
Tel.:  (601) 359-4072
Fax:  (601) 359-2003
Gerald.kucia@ago.ms.gov

*Attorney for the State Defendants*

## CERTIFICATE OF SERVICE

I, Gerald L. Kucia, Special Assistant Attorney General and attorney for Defendants Mississippi Department of Education; Mississippi State Board of Education; State Commission on School Accreditation; Rosemary Aultman, Chair of the State Board of Education; Pamela Manners, Chair of the State Commission on School Accreditation; Dr. Carey Wright, State Superintendent of Education; the Mississippi State Board of Education; and Governor Jonathon Tate Reeves; do hereby certify that I have this date caused to be filed with the Clerk of the Court a true and correct copy of the above and foregoing via the Court's CM/ECF filing system, which sent notification of such filing to all counsel of record.

THIS the 16th day of August, 2021.

s/Gerald L. Kucia
GERALD L. KUCIA