**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

| | |
|---|---|
| **HOLMES COUNTY CONSOLIDATED SCHOOL DISTRICT, DEBRA POWELL, SUPERINTENDENT, AND HOLMES COUNTY CONSOLIDATED SCHOOL DISTRICT BOARD OF TRUSTEES, NAMELY LOUISE LEWIS WINTERS, BOARD PRESIDENT, EARSIE L. SIMPSON, VICE-PRESIDENT, AND ANTHONY ANDERSON** | **PETITIONERS** |
| **VS.** | **CIVIL ACTION NO. 3:21-CV-508-DPJ-FKB** |
| **MISSISSIPPI DEPARTMENT OF EDUCATION, MISSISSIPPI STATE BOARD OF EDUCATION, STATE COMMISSION ON SCHOOL ACCREDITATION, ROSEMARY AULTMAN, CHAIR OF THE STATE BOARD OF EDUCATION, PAMELA MANNERS, CHAIR OF THE STATE COMMISSION ON SCHOOL ACCREDITATION, DR. CAREY WRIGHT, STATE SUPERINTENDENT OF EDUCATION, THE MISSISSIPPI STATE BOARD OF EDUCATION AND GOVERNOR JONATHON TATE REEVES** | **RESPONDENTS** |

**STATE DEFENDANTS' REPLY TO PLAINTIFFS'
RESPONSE TO ORDER TO SHOW CAUSE**

Defendants, Mississippi Department of Education ("MDE"); Mississippi State Board of Education ("SBE"); State Commission on School Accreditation ("CSA"); Rosemary Aultman, Chair of the SBE; Pamela Manners, Chair of the CSA; Dr. Carey Wright, State Superintendent of Education; the Mississippi State Board of Education; and Governor Jonathon Tate Reeves ("Governor Reeves") (collectively "State Defendants"); submit this, their Reply to Plaintiffs' Response to Order to Show Cause. Order [20].

## I. INTRODUCTION

The Court's August 20, 2021 Order to Show Cause ("Order") directed Plaintiffs to address two elements of the **Ex Parte Young** exception to Eleventh Amendment immunity raised by the State Defendants: (1) whether Plaintiffs allege an ongoing violation of federal law; and (2) whether Plaintiffs seek relief that can be characterized as prospective. Order [20] at 1-2. In their response, Plaintiffs argue that simply by <u>**filing**</u> the Emergency Verified Petition for Injunctive Relief, Declaratory Judgment, and Complaint for Discovery [1] ("Petition") <u>**before**</u> the Governor issued the Proclamation, the alleged "unconstitutional abolition process Petitioners challenged was not complete." Pls. Resp. [21] at 1. Thus, according to Plaintiffs, because the alleged violation of federal law was on-going at the time this suit was commenced, the two elements of **Ex Parte Young** have been met. *Id.* at 6.

The limited exception to Eleventh Amended immunity recognized by **Ex parte Young** allows a court to "enjoin a state official in his official capacity from taking future actions in furtherance of a state law that offends federal law or the federal Constitution." ***Johnson v. Miss. Dept. of Public Safety,*** 2015 WL 5313563, *3 (N.D. Miss. 2015) (emphasis added) (citations omitted). This limited exception to Eleventh Amendment immunity may not be used to review past conduct alleged to violate a constitutional right even if the Petitioners are presently suffering an ongoing injury. ***See, e.g., Jones v. Tyson Foods, Inc.,*** 971 F.Supp.2d 671, 681 (N.D. Miss. 2013) (dismissing plaintiff's claims based on Eleventh Amendment immunity because "although Plaintiff unquestionably has alleged an ongoing *injury* by asserting that he continues to suffer from TB, he has not alleged that an ongoing *violation* of federal law was committed by [Defendants]") (citing ***Papasan v. Allain,*** 4789 U.S. 265, 277-78 (1986) ("***Young*** has been focused on cases in which a violation is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past. . . .")).

2

The actions of the MDE, CSA, and SBE were complete on August 3, 2021, when the SBE made a non-binding request to the Governor to declare a state of emergency in the school district. *See* Defs.' Resp. [18], at 5-7. Upon receipt of the non-binding request, the Governor could accept or reject the request of the SBE. *See*, *id.*, at 14, n.9. The actions of the Governor were complete on August 5, 2021, when he issued the Proclamation declaring a state of emergency in the District. Labeling the proceedings as an "unconstitutional abolition process" does not convert Plaintiffs' claims into on-going violations of federal law to fit within the narrow confines of ***Ex Parte Young***. Instead, it is undisputed that as of August 5, 2021, nearly a month ago, the actions of MDE, CSA, SBE and the Governor were complete (the District was abolished), and the relief sought by Plaintiffs in the Petition that the "takeover by Respondents be enjoined, reversed and rendered[,]" is purely retrospective. Petition [1] at 9, ¶ 45.

Simply stated, at present, there is no ongoing violation of federal law such that prospective injunctive relief is available against any of the State Defendants for purposes of ***Ex Parte Young***. Defs.' Resp. [18], at 11. Thus, Plaintiffs' Petition [1] and response to the Court's Order [21] each fails to establish the two elements the Court directed Plaintiffs to address – an ongoing violation of federal law and relief that can be characterized as prospective. Accordingly, Plaintiffs have not established the necessary elements to invoke the ***Ex Parte Young*** and the Petition should be dismissed.

## II.  PROCEDURAL BACKGROUND

On August 4, 2021, Plaintiffs filed their Petition [1].[1] On August 6, 2021, the Court conducted a status conference and issued a briefing schedule. *See* August 6, 2021, Text-Only Order. Plaintiffs then filed an Amended Petition for Emergency Writ of Mandamus and supporting memorandum on August

---

[1] Despite receiving the July 26, 2021 notice of the scheduled hearings, participating in the hearings, and filing the Petition on August 4, 2021, Plaintiffs did not seek immediate injunctive relief, instead waiting until August 5, 2021 to request temporary injunctive relief. Pls.' Mot. [2]. Even then, Plaintiffs did not file a memorandum with the motion. Furthermore, while some of the State Defendants may have been informally advised about the filing of the Petition, Plaintiffs did not serve the Summons and Complaint on the Attorney General until late on the afternoon of August 5, 2021.

10, 2021.  Pls.' Amend. Pet. [16], [17].[2]  On August 16, 2021, the State Defendants filed their oppositional brief interposing the Eleventh Amendment's bar to Plaintiffs' requested relief.  Defs.' Mem. [18], 8-11.  The Plaintiffs Petition did not allege an ongoing violation of federal law or seek prospective relief for purposes of **Ex Parte Young**.  *Id.* at 11.

On August 20, 2021, the Court entered an Order to Show Cause stating that "Plaintiffs did not squarely address these two elements, instead making the conclusory argument that Defendants "may not assert a sovereign-immunity defense to [Plaintiffs'] constitutional claims for prospective injunctive and declaratory relief."  Reply [19] at 4.  Without further analysis of these issues from the parties, the Court is not convinced it has subject-matter jurisdiction."  Order [20] at 2.  Plaintiffs' response [21] to the Order does not cure the jurisdictional deficiency identified by the Court's August 20, 2021 Order.

In its latest response, Plaintiffs argue that "[t]he [G]overnor's proclamation – which the governor issued after Petitioners filed suit – is of no consequence to the Court's subject-matter jurisdiction inquiry."  Pls.' Resp. [21], at 3.  Plaintiffs maintain that "[t]he time-of-filing rule is 'hornbook law (quite literally) taught to first-year law students in any basic course on federal procedure."  Pls.' Resp. [21] at 2 (quoting **Grupo Dataflux v. Atlas Global Grp., L.P.**, 541 U.S. 567, 570-71 (2004)).[3]  This argument continues to miss the point that the Petition does not allege an on-going violation of federal law, or that prospective injunctive relief is available.[4]  Instead, the allegations against MDE, CSA, and SBE all relate to past acts.

---

[2] The Amended Petition for Emergency Writ of Mandamus [16] did not alter the nature of the relief sought in the original Writ [6].  The initial writ and amended writ mandatory sought retrospective relief.

[3] *Grupo* does not address jurisdiction in the context of Eleventh Amendment immunity.  In *Grupo*, the Court affirmed that "subject-matter jurisdiction in diversity cases depends on the state of facts that existed at the time of filing." 541 U.S. at 575.  Plaintiffs' reliance on **Double Eagle Energy Servs., L.L.C. v. MarkWest Utica EMG, L.L.C.**, 936 F.3d 260, 264 (5th Cir. 2019), a bankruptcy case, is likewise unavailing.  In *Double Eagle*, the Fifth Circuit held that despite a divestment of certain claims to one of its creditors, Double Eagle's suit remained one under the bankruptcy court's section 1334(b) jurisdiction.

[4] It is equally true that a party cannot rely on subsequent facts or events, nor inartful amended pleadings, to create subject matter jurisdiction where none existed.  **See generally**, **Ins. Corp. of Ireland,**

4

Petition [1], ¶¶ 15-29.[5]  Declaratory and/or injunctive relief against the Governor is barred for the reasons previously set forth by the State Defendants.  Defs.' Resp. [18].

Despite the allegations in the Petition, Plaintiffs continue, in conclusory fashion, to argue they have alleged on-going violations of federal law such that prospective injunctive through *Ex Parte Young* precludes Eleventh Amendment immunity.  Plaintiffs contend that "an ongoing violation existed as the unconstitutional abolition process Petitioners challenged was not complete."  Pls.' Resp. [21] at 1. Plaintiffs also assert that the "[G]overnor had not entered a proclamation, empowering the State Board of Education to abolish Petitioners as it already indicated it would.  Petitioners asked the Court to enjoin the [G]overnor and the State Board of Education from taking those actions – and thus sought prospective relief."  *Id.*

The Petition does not support this argument and conflates the statutory roles of the MDE, CSA, SBE, and the Governor.  Far from seeking prospective injunctive relief against alleged on-going violations of federal law, Plaintiffs ask this Court to review the past actions of the MDE, CSA and SBE

---

***Ltd., et al. v. Compagnie des Bauxites de Guinee***, 456 U.S. 694, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982); ***U.S. ex rel. Jamison v. McKesson Corp., et al.***, 649 F. 3d 322 (5th Cir. 2011); ***Fed. Recovery Servs., Inc., et al. v. U.S.***, 72 F. 3d 447 (5th Cir. 1995); and ***U.S. ex rel. Acad. Health Ctr., Inc. v. Hyperion Found., Inc.***, 2017 WL 3260134 (S.D. Miss. 2017).

[5] The Petition [1] contains the following allegations:  "MDE ***entered the District on April 27, 2021*** . . . ." (¶ 15); "***While MDE was in the District, it posted*** an employment opportunity . . . ." (¶ 16); "That job posting ***closed on July 21, 2021***." (¶ 17); "Two days later, ***on July 23, 2021***, MDE left the District." (¶ 18); "***MDE violated*** its own accountability policies when it left the District without conducting an exit interview." (¶ 19); "Five days after closing the job posting, ***MDE delivered*** a letter and audit report, giving the District less than six days to prepare for school-takeover hearings." (¶ 20); "Although standards are written to give MDE unlimited latitude to state the date of a hearing . . . ." (¶ 21); "[D]uring the hearing before the CSA, ***MDE misrepresented*** its relationship with a financial advisor . . . ." (¶ 22); "***MDE corrected*** its material misrepresentation during a hearing before the School Board. . . ." (¶23); "The hearing before the School Board . . . ." (¶ 24); "***MDE brought in another state employee*** to state the District did not have relationships with certain state universities." (¶ 25); "The District does, and did, have those relationships." (¶ 26); "At the conclusion of the hearing, after less than two hours, ***the State Board not only declared*** an emergency . . . ." (¶ 27); "***The State Board and CSA made the decisions*** to recommend the dissolution of the District behind closed doors." (¶ 28). "***The State Board's recommendation has been sent*** to the Governor for his approval with an expiration date of August 17, 2021." (¶ 29) (Emphasis added).

and issue declaratory and injunctive relief based on these past acts. This is precisely what the Eleventh Amendment forbids.

The actions of the MDE, CSA, SBE and the Governor concluded on August 5, 2021. Because there is no future conduct of the State Defendants that the Court may enjoin, the State Defendants are entitled to Eleventh Amendment immunity, and the Petition should be dismissed.

### III.  ALLEGATIONS IN THE PETITION

Plaintiffs' alleged causes of action further reveal the infirmity of their position. Counts I and II are directed **only** to the alleged past actions of the MDE, CSA, and SBE, culminating with the August 2, and 3, 2021 administrative proceedings. Petition [1], at 5-9. There are no allegations asserted against the Governor. Plaintiffs allege in Count I that "MBE, the State Board, and the CSA ***had made*** their decision well before the hearings held on August 2, and 3, 2021." *Id.* at 5, ¶ 31 (emphasis supplied). These allegations cannot be characterized as anything other than past acts by the MBE, CSA, and SBE. Further, Count I in the Petition does not seek any actual relief. *Id.* at 5-6, ¶¶ 30-34.

Once the MBE, SBE, and CSA performed their statutory functions leading up to the non-binding request to Governor Reeves, their role in that process was complete. These actions, and the allegations related thereto, cannot be characterized as anything other than retrospective. Moreover, and as is set forth in the State Defendants' response to the Amended Petition for Writ of Mandamus, the Governor has the sole discretion to determine whether to declare a state of emergency under Section 37-17-6(12)(b) and under Article 5, Sections 116 and 123 of the Mississippi Constitution. Defs.' Resp. [18], at 7, n.7. There is no prospective relief sought in Count I of the Petition.

Plaintiffs allege in Count II that "this Court should declare that the failure to ***have established*** a standard of proof in advance of the MDE state accreditation and conservatorship hearings ***deprived***

6

Petitioners of due process." *Id.* at 9, ¶ 45 (emphasis supplied).[6]  Again, Count II relates to alleged past acts by the MDE, the SBE, and CSA leading up to the non-binding request to Governor Reeves to declare a state of emergency in the school district.  Once the MDE, CSA, and SBE conducted their statutory duties set forth in Section 37-17-6(12)(b), those actions were completed.

With respect to Counts III and IV, the Court can easily dispatch those claims under the Eleventh Amendment.  Plaintiffs allege in Count III that the State Defendants violated the Mississippi Open Meetings Act – a question of state law and categorically barred by the Eleventh Amendment.  *Id.* at 9-11, ¶¶ 46-50.  In Count IV, Plaintiffs allege that that they are "entitled to a declaratory judgment that [the State] Defendants ***have violated*** the Mississippi Public Meetings Act, and that the deliberations and votes taken by Defendants in secrecy and other Commissioners and Board Members are invalid, and violate due process." *Id.* at 11, ¶ 51 (emphasis supplied).[7]  Plaintiffs also allege in Count IV they are "entitled to a declaratory judgment that Defendants' policies, procedures, hearings, and actions ***have violated*** [Petitioners'] rights under the Due Process Clause." *Id.* at 11, ¶ 52 (emphasis supplied).

## IV.  ARGUMENT

### A.    The Eleventh Amendment Bars Plaintiffs' Claims

The MDE is an arm of the State of Mississippi for purposes of Eleventh Amendment immunity and Plaintiffs do not contend otherwise.  **McIntosh v. Barbour**, 2010 WL 5169045, at *3 (N.D. Miss.

---

[6] Plaintiffs allege that "[t]he Respondents ***conducted*** a two-month audit and provided less than a weeks' notice for the Petitioners to assess and respond to the audit findings.  What is more, Petitioners did not receive an opportunity to question anyone regarding the findings.  Simply put, the process afforded does not provide an opportunity for a hearing appropriate to the nature of the case." Petition [1], at 6, ¶ 36 (emphasis supplied).  Plaintiffs also allege that "Respondents ***were required*** to establish a standard of proof 'at the outset' of the accreditation and takeover proceedings." *Id.* ¶ 44 (emphasis supplied).  These allegations all relate to past acts, not on-going violations of federal law.

[7] Not only is this claim a past act and not subject to the ***Ex Parte Young*** exception, it is categorically barred by **Pennhurst State School & Hospital v. Halderman,** 465 U.S. 89, 106 (1984).

7

Dec. 14, 2010); Petition [1] ("MDE is an agency of the State of Mississippi"). The Eleventh Amendment also bars suits by private citizens against a State and state officers in federal court. Official capacity lawsuits "generally represent only another way of pleading an action against an entity of which an officer is an agent," *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (internal quotations omitted) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)), accordingly, the Eleventh Amendment bar extends to suits against state actors sued in their official capacities. *KP v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010) (citing *Hutto v. Finney*, 437 U.S. 678, 700 (1978); *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004)). Thus, the Eleventh Amendment extends its cloak of immunity to any official-capacity claims against Governor Reeves, Dr. Wright, Ms. Aultman, and Ms. Manners. *Edelman v. Jordan,* 415 U.S. 651, 664 (1974); *Davis v. Tarrant County, Texas*, 565 F.3d 214, 228 (5th Cir. 2009).

### B.      Plaintiffs' State Law Claims Are Barred by the Eleventh Amendment

The Eleventh Amendment bars claims against states, state agencies, and state officials based on both federal <u>and</u> state law. *Buras v. Louisiana*, 2013 WL 5410466, at *1 (E.D. La. Sept. 25, 2013) ("Both federal and state law claims are barred from being asserted against a state in federal court."); *Yul Chu v. Mississippi State University;* 901 F. Supp. 2d 761, 771 (N.D. Miss. 2012) (same). The Supreme Court in *Pennhurst* declared:

> A federal court's grant of relief against state officials *on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law.* On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment.

465 U.S. at 106 (1984) (emphasis supplied).

The Fifth Circuit has clearly enforced this mandate, holding that a plaintiff's state law claims "are not cognizable . . . because state officials continue to be immunized from suit in federal court on alleged violations of state law brought under the federal courts' supplemental jurisdiction." *Earles v.*

***State Bd. of Certified Public Accountants of La.,*** 139 F.3d 1033, 1039 (5th Cir. 1998) (citing ***Pennhurst*** at 103-21). Plaintiffs' briefing fails to address the inescapable conclusion that their state-law claims in Counts III and IV are barred by the Eleventh Amendment under ***Pennhurst***.

### C. *Ex parte Young* Does Not Save Plaintiffs' Federal Claims

Given the Eleventh Amendment plainly bars Plaintiffs' state law claims, the only issue is whether the two alleged federal "Causes of Action" asserted in the Petition are barred by the Eleventh Amendment. Plaintiffs contend the ***Ex parte Young*** doctrine applies to their federal claims, but they are wrong. In ***Ex parte Young,*** 209 U.S. 123 (1908), the Supreme Court created a narrow exception to Eleventh Amendment immunity under which a federal court "may enjoin state officials to conform *their future conduct* to the requirements of federal law[.]" ***Quern v. Jordan***, 440 U.S. 332, 337 (1979) (emphasis supplied). "The ***Ex parte Young*** exception is 'focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past.'" ***Williams ex rel. J.E. v. Reeves***, 954 F.3d 729, 737 (5th Cir. 2020) (quoting ***Papasan v. Allain***, 478 U.S. 265, 277-78 (1986)). To avoid the Eleventh Amendment, the Petition must plausibly "allege[] an ongoing violation of federal law and seek[] relief properly characterized as prospective." ***Virginia Office for Prot. and Advocacy v. Stewart***, 563 U.S. 247, 255 (2011). Each element must be satisfied to take advantage of ***Ex parte Young***. Instead, Plaintiffs state that "[t]he takeover by Respondents should be enjoined, reversed, and rendered." Petition [1] at 5, ¶ 45. This is not prospective in nature but based solely on past actions by the State Defendants.

Similarly, declaratory relief is not permitted under ***Ex parte Young*** when it would serve to declare only past actions in violation of federal law. Retroactive declaratory relief cannot be properly characterized as prospective. ***See Green v. Mansour,*** 474 U.S. 64, 74 (1985) (holding that the Eleventh Amendment bars retrospective declaratory relief against state officials). In this case, declaratory relief

9

regarding the State Defendants' alleged past conduct must be dismissed because the Eleventh Amendment does not permit judgments against state officers declaring that they violated federal law in the past. *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).

### D. No Ongoing Violation of Federal Law

In relying on *Ex Parte Young,* Plaintiffs contend that when they filed the "Emergency Verified Petition, the 'ongoing violation of federal law' was Respondents' continued enforcement of § 37-17-6, which denied Petitioners due process." Pls.' Resp. [21], at 6. But a review of Petition reveals that this argument is in conflict with the allegations against the MDE, CSA and SBE about which Plaintiffs complain. The allegations in the Petition relate to past acts and not on-going violations of federal law. *See supra*, n.3. The Petition fails to allege any facts demonstrating that the State Defendants are currently violating their constitutional rights. *Williams v. Zachary*, 2019 WL 419289, at *3 (N.D. Miss. Feb. 1, 2019) (holding that proposed amended complaint seeking to enjoin the Mississippi Highway Patrol from "engaging in unlawful customs, policies and practices" of "being deliberately indifferent to the serious medical needs of their arrestees" was barred by Eleventh Amendment because it did not allege an ongoing violation of federal law).

Similarly, Plaintiffs aver that "this Court should declare that the failure to have established a standard of proof in advance of the MDE state accreditation and conservatorship hearings deprived Petitioners of due process." Petition [1], at 9, ¶ 45. But this is precisely the type of retrospective relief barred by the Eleventh Amendment. The Fifth Circuit has been clear that "the *Ex parte Young* doctrine does not permit 'a declaratory judgment that respondent violated federal law in the past' . . . ." *Corn v. Mississippi Dep't of Pub. Safety*, 954 F.3d 268, 276 (5th Cir.), *cert. denied*, 141 S. Ct. 672, 208 L. Ed. 2d 277 (2020) (quoting *Mansour,* 474 U.S. at 74, (Brennan, J., dissenting)); *see also Spec's Fam. Partners, Ltd. v. Nettles*, 972 F.3d 671, 681 (5th Cir. 2020) ("The injunctive relief sought focuses on past

behavior but does not allege an 'ongoing violation of federal law.'") (citation omitted); **Williams,** 954 F.3d at 737 (**Young** exception "focuse[s] on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past").[8]

The Fifth Circuit's decision in **Cantu Services, Inc. v. Roberie,** 535 Fed. Appx. 342, 345 (5th Cir. 2013) is instructive. In **Cantu**, plaintiff, an unsuccessful bidder for a food services contract, alleged that the bidding process was conducted in a manner that violated due process and equal protection rights. *Id.* at 345. The Fifth Circuit again explained that to fit within the **Ex parte Young** exception, the plaintiff was "required to show . . . that the allegedly unconstitutional bidding process was not a 'one-time, past event' but an ongoing violation." *Id.* (quoting citation omitted). Because "[t]he award process terminated with the issuance of a new contract," the Court held that "there [wa]s no ongoing violation of law remediable by prospective relief under **Ex parte Young**." *Id.* Here, MDE's On-Site Audit of the school District, and the CSA and SBE's non-binding request to the Governor to declare a state of emergency in the District terminated the actions of the MDE, CSA, and SBE.

Plaintiffs' requested declaratory relief is also not prospective in nature. Instead, Plaintiffs seek a declaration that at some point in the past, the State Defendants' "policies, procedures, hearings, and actions ***have violated*** Portitioners' [sic] rights under the Due Process Clause." Petition [1], at 11, ¶ 52 (emphasis supplied). However, the Supreme Court has been clear that **Ex parte Young** "does not permit judgments against state officers declaring that they violated federal law in the past." **P.R. Aqueduct & Sewer Auth.,** 506 U.S. at 146. As the Fourth Circuit declared in **Republic of Paraguay v. Allen**, 134 F.

---

[8] **Sonnleitner v. York**, 304 F.3d 704, 718 (7th Cir. 2002) (holding that allegations that plaintiff was demoted without due process "refer[red] to, at most, a past rather than an ongoing violation of federal law"); **Miller v. Rosado,** 2017 WL 3333961, at *14 (N.D. Ind. Aug. 4, 2017) (holding that even if plaintiff did not receive notice that her Medicaid disability application had been denied and this amounted to a violation of her constitutional rights, "the violation occurred in the past and is not ongoing").

11

3d 622 (4th Cir. 1998), when the essence of the case now before this Court is considered, the only presently effective relief sought for the violations claimed by the Plaintiffs is quintessentially retrospective: the voiding of the Governor's Proclamation. That this could be effectuated in an injunctive or declaratory decree directed at state officials does not alter the inescapable fact that its effect would be to undo accomplished state action and not to provide prospective relief against the continuation of the past alleged violation. ***Republic of Paraguay***, 134 F. 3d at 628. This is precisely the relief sought by Plaintiffs today. The State Defendants respectfully urge the Court to decline Plaintiffs invitation to depart from well-settled constitutional principles in the application of the Eleventh Amendment.

Once they find that an extreme emergency situation exists in a school district that jeopardizes the safety, security, or educational interests of the children enrolled in a school district, CSA and SBE have the statutory authority to make a non-binding requesting that the Governor declare a state of emergency in a school district. ***See Mississippi State Board of Education, et al. v. Leflore County Board of Education, et al.***, No. 2013-IA-01677-SCT (2013), attached as *Exhibit 1*. In ***Leflore County Board of Education***, the Mississippi Supreme Court concluded the separation of powers doctrine prohibits judicial review of a non-binding request by an executive branch agency made to the Governor as the chief executive officer. *Id.* at 3.

This statutory framework, and the relationship between the CSA, SBE, and the Governor, is clearly set forth in Section 37-17-6(12)(b):

> (b)  If the State Board of Education and the Commission on School Accreditation determine that an extreme emergency situation exists in a school district that jeopardizes the safety, security or educational interests of the children enrolled in the schools in that district and that emergency situation is believed to be related to a serious violation or violations of accreditation standards or state or federal law, or when a school district meets the State Board of Education's definition of a failing school district for two (2) consecutive full school years, or if more than fifty percent (50%) of the schools within the school district are designated as Schools At-Risk in any one (1) year, the State Board of Education may request the Governor to declare a state of emergency in that school district. For purposes of this paragraph, the declarations of a state of emergency shall not

>be limited to those instances when a school district's impairments are related to a lack of financial resources, but also shall include serious failure to meet minimum academic standards, as evidenced by a continued pattern of poor student performance.

*Id.* (Emphasis supplied).

On July 26, 2021, the MDE issued the "On-Site Investigative Audit Report" for the Holmes County Consolidated School District. Defs.' Resp. [18], at 5.[9] On August 2, 2021, the CSA convened, following presentations by the MDE and Plaintiffs, and determined that "there is sufficient cause to believe that an extreme emergency situation exists in the Holmes County School District . . .." Defs.' Response [18], at 6. At this juncture, the CSA's role in this process concluded.

On August 3, 2021, the SBE convened, and following presentations by the MDE and Plaintiffs, determined that "there is sufficient cause to believe that an extreme emergency situation existed in the school district that jeopardized the safety, security, or educational interests of the children in the schools of the district." *Id.* at 6. The SBE then made a non-binding "request of the Honorable Tate Reeves, Governor of the State of Mississippi, that a state of emergency be declared effective immediately in the Holmes County Consolidated School District pursuant to Miss. Code Ann § 37-17-6(12)(b). *Id.* at 7. Upon making this non-binding request to the Governor, the SBE's statutory function in making a non-binding request to Governor Reeves was complete. The Governor signed the Proclamation on August 5, 2021 and his role in the process was complete.

---

[9] *See* On-Site Investigative Audit for the Holmes County School District: mdek12.org/sites/default/files/Offices/MDE/OCGR/audit_binder_holmes_ccsd_final_7.23.2021.pdf

## V.  CONCLUSION

For the reasons set forth, the State Defendants request that the Court dismiss the Petition as barred by the Eleventh Amendment and for such other relief as the Court deems proper.

THIS the 1st day of September, 2021.

        Respectfully submitted,

        MISSISSIPPI DEPARTMENT OF EDUCATION; MISSISSIPPI STATE BOARD OF EDUCATION; STATE COMMISSION ON SCHOOL ACCREDITATION; ROSEMARY AULTMAN, CHAIR OF THE STATE BOARD OF EDUCATION; PAMELA MANNERS, CHAIR OF THE STATE COMMISSION ON SCHOOL ACCREDITATION; DR. CAREY WEIGHT, STATE SUPERINTENDENT OF EDUCATION; THE MISSISSIPPI STATE BOARD OF EDUCATION; AND GOVERNOR JONATHON TATE REEVES, DEFENDANTS

By:    LYNN FITCH, ATTORNEY GENERAL
          STATE OF MISSISSIPPI

By:    <u>s/Gerald L. Kucia</u>
          GERALD L. KUCIA (MSB #8716)
          DREW D. GUYTON (MSB #104451)
          Special Assistant Attorney General

OFFICE OF THE ATTORNEY GENERAL
CIVIL LITIGATION DIVISION
Post Office Box 220
Jackson, Mississippi  39205-0220
Tel.:  (601) 359-4072
Fax:  (601) 359-2003
Gerald.kucia@ago.ms.gov

*Attorney for the State Defendants*

**CERTIFICATE OF SERVICE**

I, Gerald L. Kucia, Special Assistant Attorney General and attorney for Defendants Mississippi Department of Education; Mississippi State Board of Education; State Commission on School Accreditation; Rosemary Aultman, Chair of the State Board of Education; Pamela Manners, Chair of the State Commission on School Accreditation; Dr. Carey Wright, State Superintendent of Education; the Mississippi State Board of Education; and Governor Jonathon Tate Reeves; do hereby certify that I have this date caused to be filed with the Clerk of the Court a true and correct copy of the above and foregoing via the Court's CM/ECF filing system, which sent notification of such filing to all counsel of record.

THIS the 1st day of September, 2021.

s/Gerald L. Kucia  
GERALD L. KUCIA