UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

HOLMES COUNTY
CONSOLIDATED SCHOOL
DISTRICT, ET AL.
                                                                                    PETITIONERS

V.                                                  CIVIL ACTION NO. 3:21-CV-508-DPJ-FKB

MISSISSIPPI DEPARTMENT OF                                                RESPONDENTS
EDUCATION, ET AL.

ORDER

Petitioners allege that Respondents violated 42 U.S.C. § 1983 when closing the Holmes Consolidated School District (the "District"). The case is before the Court on (1) its own motion regarding subject-matter jurisdiction; (2) Petitioners' two motions seeking mandamus [6, 16]; and (3) Petitioners' motion for temporary restraining order (TRO) [2]. As explained below, the Court concludes that (1) it has subject-matter jurisdiction over the procedural-due-process claim but not the remaining claims; (2) Petitioners' first motion for mandamus relief is moot, and their second is denied; and (3) Petitioners' motion for TRO is denied without prejudice to refiling.

I.    Facts and Procedural History

In April 2021, the Mississippi Department of Education (MDE) began an on-site investigative audit of the District. That audit concluded on July 23, 2021, and on July 26, 2021, MDE sent a letter to the District's superintendent and the president of its school board: Attached was an audit report indicating that the District "is in violation of 26 out of 32" accreditation standards. Letter [1-2] at 1. The letter further informed the District that

> [t]he MDE Office of Accreditation will present evidence to the Commission on School Accreditation (Commission), which will determine whether an extreme emergency exists in the [District] that jeopardizes the safety, security, or educational interests of the children enrolled in the schools in the District. . . . The Commission meeting will begin at 10:00 a.m. on Monday, August 2, 2021, in

> the Senator Gray Ferris Board Room on the Fourth Floor of the Central High School Building in Jackson, Mississippi.
>
> Pursuant to Accreditation Policy 2.9.2.2, District representatives, which shall include[] the Superintendent and the [District] Board Chair, will be allowed to address the Commission prior to the Commission's determination. . . .
>
> If the Commission makes a recommendation(s) at this meeting, the recommendation(s) will be presented to the [State Board of Education (SBE)] at a special-called meeting on August 3, 2021, at 10:00 a.m. in the Senator Gray Ferris Board Room on the Fourth Floor of the Central High School Building in Jackson, Mississippi.  The SBE will follow the same format as the Commission in allowing the District and the MDE to address the SBE prior to the SBE's determination.

*Id.* at 2.

> Those meetings took place, and the Commission and the SBE found, on August 3, 2021,
>
> > sufficient cause to believe that an extreme emergency situation exists in the . . . District brought on by serious violations of state and federal law and accreditation standards, serious concerns regarding financial resources and lack of internal controls, inappropriate standards of governance, inappropriate oversight by the local board, a continued pattern of poor academic performance, and the failure to sustain a safe school climate, which jeopardizes the safety, security, and educational interests of the children enrolled in the schools of this district, and which, without intervention by the Commission . . . and the [SBE], could result in the continuation of an inadequate and unstable educational environment thereby denying the students of this district the opportunity to learn, to excel, and to obtain a free and appropriate public education.

SBE Resolution [18-3] at 1; *accord* Commission Resolution [18-2] at 1.  The SBE's Resolution requested a proclamation from the Governor declaring "a state of emergency . . . effective immediately in the . . . District" and stating that, "contingent upon" such proclamation, the District would be "abolish[ed]."  SBE Resolution [18-3] at 2.  The SBE would then "exercise all powers which were held by the previously existing school board and the previously existing superintendent of schools."  *Id.*

The following day, August 4, 2021, Petitioners, including the District, its superintendent, and the members of its board of trustees, filed their Emergency Verified Petition for Injunctive Relief, Declaratory Judgment, and Complaint for Discovery.  The Petition alleges two federal

2

due-process claims under § 1983, a claim that Respondents violated Mississippi's Open Meetings Act, and a request for declaratory relief.

At 10:21 a.m. on August 5, 2021, Petitioners filed a motion for a TRO without an accompanying memorandum of law.  At 1:25 p.m. that day (before the Court and counsel could agree to a briefing schedule on the TRO motion), Governor Reeves issued a proclamation declaring a state of extreme emergency in the District.  That proclamation triggered SBE's resolution, effectively abolishing the District and inserting SBE into its role.

Petitioners immediately responded with an Urgent and Necessitous Motion for Writ of Mandamus [6] and, a few days later, with an amended motion [16].  The Court then set a briefing schedule on the mandamus motion, but the resulting briefs raised jurisdictional concerns.  So, on August 20, 2021, the Court entered an Order directing Petitioners "to show cause . . . why this case should not be dismissed for lack of subject-matter jurisdiction." Order [20] at 2.  The parties have now briefed the jurisdictional issues.

II.     Analysis

      A.     Jurisdiction and the Court's Show-Cause Order

"The Eleventh Amendment bars an individual from suing a state in federal court unless the state consents to suit or Congress has clearly and validly abrogated the state's sovereign immunity."  *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002).  "The state need not be the named party in a federal lawsuit, for a state's Eleventh Amendment immunity extends to any state agency or entity deemed an 'alter ego' or 'arm' of the state."  *Id.*  The Eleventh Amendment bar, when it applies, implicates the Court's subject-matter jurisdiction. *Warnock v. Pecos County*, 88 F.3d 341, 343 (5th Cir. 1996).

Petitioners acknowledge the Eleventh Amendment issue but say their official-capacity, due-process claims against the individual defendants fall within the narrow *Ex parte Young* exception to that immunity. 209 U.S. 123 (1908). "Under *Ex parte Young*, a litigant may sue a state official in his [or her] official capacity if the suit seeks prospective relief to redress an ongoing violation of federal law." *Williams ex rel. J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020) (citation omitted). "There are three basic elements of an *Ex parte Young* lawsuit. The suit must: (1) be brought against state officers who are acting in their official capacities; (2) seek prospective relief to redress ongoing conduct; and (3) allege a violation of federal, not state, law." *Id.*

In this case, *Ex parte Young* is largely inapplicable. To begin, the Eleventh Amendment bars Counts I and II to the extent Petitioners assert due-process claims against MDE, the SBE, and the Commission; those entity defendants constitute arms of the state, not state officers. *See McIntosh v. Barbour*, No. 4:10-CV-72-P-S, 2010 WL 5169045, at *3 (N.D. Miss. Dec. 14, 2010) (concluding MDE is arm of the state); *see also Perez*, 307 F.3d at 326 ("[A] state's Eleventh Amendment immunity extends to any state agency or entity deemed an 'alter ego' or 'arm' of the state."). The Eleventh Amendment also bars Count III in its entirety because it reflects a claim that Defendants violate Mississippi's Open Meetings Act. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) (holding that Eleventh Amendment prohibits federal courts from "instruct[ing] state officials on how to conform their conduct to state law"). Nor may Petitioners sue Defendants Aultman, Manners, and Wright in their official capacities for past harms. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).

None of that is seriously disputed, but the Court also finds that the Eleventh Amendment bars Petitioners' claims for declaratory relief stated in Count IV. In that count, Petitioners seek

two declarations related to the federal-law claims: (1) that "the deliberations and votes *taken* by Defendants in secrecy and other Commissioners and Board Members are invalid, and violate due process" and (2) "that Defendants' policies, procedures, hearings, and actions have *violated* Portioners' [sic] rights under the Due Process Clause." Pet. [1] ¶¶ 51, 52 (emphasis added).

The Fifth Circuit addressed similar declarations in *Freedom From Religion Foundation v. Abbott*, a case that arose when Texas denied a foundation's request to erect a display on capitol grounds. 955 F.3d 417 (5th Cir. 2020). There, the complaint properly sought prospective declaratory relief by seeking a declaration that the state's criteria for public displays, "'as applied by Defendants, *violate*' the First Amendment." *Id.* at 424. But the trial court ultimately entered a declaration "that Defendants *violated* [the plaintiff's] First Amendment rights." *Id.* at 423 (emphasis added). The Fifth Circuit reversed, holding:

> The backwards-looking, past-tense declaratory judgment issued by the district court is "tantamount to an award of damages for a past violation of law, even though styled as something else." [*Papasan v. Allain*, 478 U.S. 265, 278 (1986)]; *see also Green v. Mansour*, 474 U.S. 64, 68–69, 106 S. Ct. 423, 88 L. Ed. 2d 371 (1985) (finding that the Eleventh Amendment barred a claim for declaratory relief once the claim for injunctive relief was rendered moot). While it is true that the declaratory judgment could have some future effect by clarifying the contours of the First Amendment and deterring similar actions by the state, "compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment." *Green*, 474 U.S. at 68, 106 S. Ct. 423.

*Id.* at 425–26. The same is true here. Petitioners seek declarations regarding decisions that were made pre-suit; the Court lacks jurisdiction over Count IV.

So, the remaining question is whether any of Petitioners' § 1983, official-capacity claims seek prospective injunctive relief for an ongoing violation of federal law. When assessing this element, "a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Planned Parenthood Gulf Coast, Inc. v. Phillips*, 5 F.4th 568, 578 (5th Cir. 2021)

5

(quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002))); *see Reeves*, 954 F.3d at 737 ("Thus, to comply with the dictates of *Ex parte Young*, plaintiffs' lawsuit must allege that the defendants' actions are currently violating federal law.").

Respondents say "[t]he actions of the MDE, [the Commission], SBE and the Governor concluded on August 5, 2021. [And b]ecause there is no future conduct of the State Defendants that the Court may enjoin, the State Defendants are entitled to Eleventh Amendment immunity, and the Petition should be dismissed." Resp'ts' Mem. [22] at 6. But, even assuming Respondents stopped acting on August 5 when the Governor signed the proclamation, Petitioners sued on August 4. And, according to them, the Court must assess subject-matter jurisdiction as of that date under the time-of-filing rule. *See* Pet'rs' Mem. [21] at 1. Superficially stated, the rule provides that "the jurisdiction of the court depends on the state of things at the time of the action brought." *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570 (2004) (quoting *Mollan v. Torrance*, 9 Wheat. 537, 539 (1824)).

The time-of-filing rule is heavily nuanced and does not apply in all contexts.[1] Here, Respondents say the rule is inapplicable but have not offered legal analysis based on factually relevant authority. Instead, Respondents contend that Petitioners' time-of-filing "argument

---

[1] For example, in *16 Front Street, L.L.C. v. Mississippi Silicon, L.L.C.*, the Fifth Circuit noted the rule's different treatments for cases involving amended complaints:

> [T]he time-of-filing rule should apply in the context of cases raising a federal question that have been removed, but . . . in cases initially brought by a plaintiff in federal court . . . [j]urisdiction . . . may be lost if the amended pleading fails to state a claim arising under [federal] law[] .

886 F.3d 549, 558 (5th Cir. 2018) (citing *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 507–08 (5th Cir. 1985)).

continues to miss the point that the Petition does not allege an on-going violation of federal law, or that prospective injunctive relief is available.  Instead, the allegations against MDE, [the Commission], and SBE all relate to past acts." Resp'ts' Mem. [22] at 4.[2]

Respondents' argument seems circular:  The time-of-filing rule does not apply because their own post-filing conduct made the relief sought retrospective.  But as of the August 4 filing, the process for abolishing the District had not concluded, and Petitioners were alleging an ongoing violation.  Under section 37-17-13 of the Mississippi Code,

> Whenever the Governor declares a state of emergency in a school district in response to a certification by the State Board of Education and the Commission on School Accreditation made under Section 37-17-6(12)(b), the State Board of Education, in addition to any actions taken under Section 37-17-6, may abolish the school district and assume control and administration of the schools formerly constituting the district, and appoint an interim superintendent to carry out this purpose under the direction of the State Board of Education.

*See also id.* § 37-17-6(12) (addressing recommendations for Governor to declare state of emergency).  Consistent with that statute, the SBE issued a resolution requesting that the Governor declare "a state of emergency . . . effective immediately in the . . . District." SBE Resolution [18-3] at 2.  It explained that "**contingent upon** the Proclamation of the Honorable

---

[2] Respondents also said the time-of-filing rule is inapplicable to the Governor but simply incorporated their arguments from another brief without further explanation.  Resp'ts' Mem. [22] at 5.  One such argument might apply in this context—their contention that "Petitioners neither asserted claims nor sought relief against" the Governor.  Resp'ts', Mem. [18] at 2.  While the Court rejects that argument, it is not entirely frivolous and turns on whether Petitioners included the Governor among the "Respondents" they asked the Court to enjoin.  When listing the parties in the body of the Petition, Petitioners stated as to some that they "are Respondents in this suit." *See, e.g.*, Pet. [1] ¶ 11.  For some reason, they did not use that language as to the Governor.  *See id.* ¶ 12.  But in the style of the Petition, Petitioners list the Governor among the "Respondents." *See* Pet. [1].  And Black's Law Dictionary defines "respondent" as "the defendant in an equity proceeding." *Respondent*, Black's Law Dictional (11th ed. 2019).  Petitioners filed a petition seeking equitable relief and named the Governor; they also sought relief that would encompass an injunction preventing the Governor from signing the proclamation.  *See* Pet. ¶¶ 29 (noting that recommendation was sent to Governor); *id.* ¶ 45 (seeking to enjoin takeover).  Respondents were on notice that the Governor was among the Respondents.

Tate Reeves, . . . the [SBE] does hereby abolish the . . . District." *Id.* (emphasis added).  And it declared that "***contingent upon*** the Proclamation of the Honorable Tate Reeves, . . . the [SBE] ***will*** exercise all powers which were held by the previously existing school board and the previously existing superintendent of schools."  *Id.* (emphasis added).

None of those contingent steps had occurred by the August 4 filing date because the Governor had not signed the proclamation; the District had not yet been abolished; and SBE had not yet stepped in.  And that is exactly what Petitioners attempted to block when they sought to enjoin Respondents (including the Governor) from completing the ongoing—and allegedly violative—abolition process.  *See* Pet. [1] ¶ 45 ("The takeover by Respondents should be enjoined.").

These facts satisfy the three basic elements under *Ex parte Young*:  (1) Petitioners sued the individual state officers in their official capacities; (2) they sought prospective relief to redress ongoing conduct (an injunction that would prevent the Governor from signing a proclamation and the others from acting on such proclamation to abolish and take over the District); and (3) the claim was premised on federal law (Petitioners asserted that the recommendation upon which the Governor was about to act violated due process).  *Williams*, 954 F.3d 736.  In short, on August 4, the process for abolishing and taking over the District would have halted with an injunction precluding the Governor from signing the requested proclamation or precluding the other individual defendants from acting on it.[3]

---

[3] The parties never parse out which individual defendants would have "some connection" with implementing the takeover, so it is not yet apparent which should remain as defendants.  *Young*, 209 U.S. at 157.  At this point, the individual Respondents remain parties to the extent an injunction is sought to prevent taking over the District.

As stated, the time-of-filing rule is context specific. And here, the parties have identified no cases where jurisdiction existed under *Ex parte Young* when suit was filed but the claim became retrospective because a named defendant took the very action the complaint sought to enjoin. Despite the absence of cited authority directly on this point, applying the time-of-filing rule here promotes one of its recognized policies—preventing efforts to "manipulate jurisdiction." *Knudson v. Sys. Painters, Inc.*, 634 F.3d 968, 976 (8th Cir. 2011); *see also 16 Front St.*, 886 F.3d at 558 (comparing cases and holding that time-of-filing rule did not apply where amendment added federal-question claim against new party and was not "being used to create jurisdiction over the claim against" original defendant). Allowing Respondents to divest jurisdiction by taking the action Petitioners sought to enjoin—both in their Petition and Motion for TRO—would violate this policy. On this record, Court concludes that the rule applies and that federal subject-matter jurisdiction exists.[4]

---

[4] Two related tenets buttresses this conclusion. First, the Supreme Court has long held that "after a defendant has been notified of the pendency of a suit seeking an injunction against him[,] . . . he acts at his peril and subject to the power of the court to restore the status." *Jones v. Sec. & Exch. Comm'n*, 298 U.S. 1, 17–18 (1936); *see also Nasco, Inc. v. Calcasieu Television & Radio, Inc.*, 623 F. Supp. 1372, 1383 (W.D. La. 1985) (noting "full and inherent power to restore the status quo"), *aff'd sub nom. Nasco Inc. v. Calcasieu Tele/Radio*, 797 F.2d 975 (5th Cir. 1986). Whether the Governor had notice has been neither established nor argued, but the policy informs the jurisdictional decision. Second, though there was no need to plead a claim for reinstatement as of August 4, the Fifth Circuit has held that "a request for reinstatement is sufficient to bring a case within the *Ex parte Young* exception to Eleventh Amendment immunity, as it is a claim for prospective relief designed to end a continuing violation of federal law." *Nelson v. Univ. of Tex. at Dall.*, 535 F.3d 318, 324 (5th Cir. 2008); *see also id.* at 324 n.5 (recognizing that decision "treats terminations as ongoing violations of law with respect to *Ex parte Young* but not with respect to employment discrimination limitations issues" and concluding that "seeming inconsistency is unusual, but not unprecedented").

B.  Remaining Motions

Starting with the motion for a TRO, the facts have changed significantly since Petitioners filed their motion, and they never filed a supporting memorandum. Rather than invite an amended motion followed by briefing, the Court denies the motion without prejudice to refiling.

Turning to the motions seeking a writ of mandamus, Petitioners' amended motion moots their first, which is therefore denied. As for the amended motion, Petitioners seek a writ of mandamus that (1) orders the Governor to rescind the proclamation and (2) orders Respondents to take no further action in reliance on the proclamation. Pl.'s Mot. [16] at 1.

As an initial point, it is not apparent that the Court has jurisdiction to issue mandamus against a state officer. Petitioners cite *Hoffman v. Stump*, where the Sixth Circuit held: "Although the federal court may not compel a state officer to enforce state rights, it may issue a writ of mandamus ordering a state official to enforce rights protected by federal law." No. 97-177, 1998 WL 69972, at *6 (6th Cir. Dec. 2, 1998). But the Fifth Circuit has, on at least two occasions, refused to recognize mandamus against a state official where the plaintiffs expressly sought to protect federal rights. First, in *Gordon v. Whitley*, a state prisoner sought mandamus to remedy violations of "several constitutional rights." No. 93-3785, 1994 WL 242649 at *1 (5th Cir. May 17, 1994). The district judge dismissed the case, and the Fifth Circuit affirmed, holding: "Federal mandamus applies to officers, employees, and agencies of the United States. It does not apply to officers, employees, and agencies of states." *Id.* Then, in *Ochoa v. Collier*, a death-row inmate sought mandamus regarding "unconstitutional prison policies that allegedly favor access to media over that of an inmate's attorneys." 802 F. App'x 101, 104 (5th Cir.), *cert. denied*, 140 S. Ct. 990, 206 L. Ed. 2d 140 (2020). The Fifth Circuit affirmed dismissal, holding that "federal courts do not have jurisdiction to issue the writ against a state actor or state

agencies." *Id.* at 105. Petitioners failed to respond to this portion of Respondents' memorandum and have not established the Court's jurisdiction to issue a writ of mandamus.

Even assuming jurisdiction, it is not apparent that a writ of mandamus is appropriate. A writ of mandamus "is one of 'the most potent weapons in the judicial arsenal.'" *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004) (quoting *Will v. United States*, 389 U.S. 90, 107 (1967)). To justify this "extraordinary remedy," Petitioners must meet three elements:

> First, the party seeking issuance of the writ must have no other adequate means to attain the relief he desires . . . . Second, the petitioner must satisfy the burden of showing that [its] right to issuance of the writ is clear and indisputable. . . . Third, even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances.

*Id.* at 380–81 (internal citations omitted, punctuation altered).

Here, the Court does not condone the Governor's actions *if* he knew about the pending suit. But, as noted above, if that is the case, then the Court has equitable powers that could address it, if appropriate. *See supra* note 3. That also means Petitioners are not without *potential* remaining remedies. *Cheney*, 542 U.S. at 380. Moreover, there are fact questions that prevent the Court from fully assessing Petitioners' claims and determining whether their right to mandamus is "clear and indisputable." *Id.* at 381. And, for the reasons stated next, mandamus is not presently "appropriate under the circumstances." *Id.*

Petitioners have not demonstrated a right to relief under the All Writs Act. The Act states: "[A]ll courts established by Act of Congress **may** issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a) (emphasis added). "The plain language of the All Writs Act establishes the permissive, non-mandatory, nature of the court's power to issue an injunction." *Bailey v. State Farm Fire & Cas. Co.*, 414 F.3d 1187, 1189 (10th Cir. 2005) (citing 28 U.S.C. § 1651(a)).

11

While the statute confers "extraordinary powers . . . that authority is not unlimited. Rather, it is firmly circumscribed." *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1358 (5th Cir. 1978). Notably, "[t]he All Writs Act may be said to provide a federal court with those writs necessary to the preservation or exercise of its subject matter jurisdiction." *Id.* at 1359. "The All Writs Act also empowers a federal court to employ procedures necessary to promote the resolution of issues in a case properly before it. . . . [But], if a court is able to effect a full and complete resolution of the issues before it without resorting to the extraordinary measures contemplated under the Act, then such measures cannot be employed." *Id.* at 1359. "The mere 'fact that a party may be better able to effectuate its rights or duties if a writ is issued never has been, and under the language of the [All Writs Act] cannot be, a sufficient basis for issuance of the writ.'" *Williams v. McKeithen*, 939 F.2d 1100, 1105 (5th Cir. 1991) (quoting *Barton*, 569 F.2d at 1360).

As noted, the Court has concluded that subject-matter jurisdiction exists, so the requested writ is unnecessary to preserve the Court's jurisdiction or reach a full resolution. The Court also sees other equitable concerns. By the time the jurisdictional briefing finished, the SBE had presumably taken over the District and was running it. The requested writ would reverse that in the middle of the school year. But because the Court has not yet considered the merits—which will require some factual development—it remains unclear how likely Petitioners are to receive any relief. And even assuming a meritorious claim, it remains to be seen whether that relief would ultimately result in reinstatement or just the right to more process. Reinstating Petitioners at this juncture would be unwise and could prove unnecessarily disruptive to the children and the schools during an already difficult period due to the ongoing pandemic. That

12

said, the Court will meet with the parties to develop an expedited schedule for addressing the merits.

III.    Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. The Court concludes that the Eleventh Amendment bars the state-law claim and all claims against the Mississippi Department of Education, the Mississippi State Board of Education, and the State Commission on School Accreditation. It likewise bars Count IV seeking declaratory relief and the claims against Rosemary Aultman, Pamela Manners, and Dr. Carey Wright for alleged past acts. Those claims are all dismissed without prejudice. The claims against all individual Respondents survive to the extent Petitioners sought to prevent them from acting on the allegedly unconstitutional process going forward. Petitioners' Motion for TRO [2] and two motions for a writ of mandamus [6, 16] are denied. The parties are instructed to contact the Court's Courtroom Deputy by January 26, 2022, to set the case for an in-person status conference.

**SO ORDERED AND ADJUDGED** this the 19th day of January, 2022.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE